## RICE v. CITY OF ST. LOUIS et al., Appellants.

### Division One, December 17, 1901.

1. **Negligence:** JOINT LIABILITY OF TWO DEFENDANTS: WATERWORKS: FLOODING PRIVATE PROPERTY. The city contracted with its co-defendant to sprinkle its streets, and he was to get the water from the city hydrants, and was furnished a key for unlocking the hydrants and turning the water into the hose, which was attached to the hydrant by means of a brass screw. Whenever the hydrants were unsafe or were not to be used they were painted red, and when safe they were painted black. The hydrant in question was painted black, but the knob was badly worn, and after the driver had made the connection and filled the tank and was attempting to close the plug the key slipped off the knob, and striking against the coupling broke it loose and the escaping water flooded plaintiff's private premises. The knob and the threads in the screw were badly worn, and these defects caused the damage; the defective knob caused the key to slip off, and the defective screw caused the connection to break. The city's co-defendant did not know the hydrant was defective, and had

Rice v. City of St. Louis.

no control or authority over the hydrant or the waterworks. As soon as it was suggested to the driver he backed his wagon in front of the spouting water, and thus deflected it from plaintiff's premises. *Held* that the city alone is liable. *Held*, also, that the fact that the negro driver, in his excitement, did not sooner back the wagon against the escaping stream does not impute negligence to his master.

2. ———: ———: ———: ———: EVIDENCE OF DRIVER: RES GESTAE. A statement by one driver of the co-defendant's tanks to the one in charge when this accident occurred, but after it had occurred, that he knew the hydrant was defective, did not charge his master with such knowledge.

Appeal from St. Louis City Circuit Court.—*Hon. Selden P. Spencer*, Judge.

REVERSED AS TO APPELLANT SIPPY; OTHERWISE AFFIRMED.

*Frank A. C. MacManus* for appellant Sippy.

The court erred in not sustaining defendant Sippy's motion for a new trial. Donoho v. Vulcan Iron Works, 75 Mo. 401; Badgley v. St. Louis, 149 Mo. 122. If Sippy is liable in the present action it must arise out of some direct "negligence or carelessness" of his own or that of his agents. His contractual relations with the city, if of any importance, show the absolute right to do just what the "negro driver" of the water cart was doing, immediately prior to the occurrence complained of. Had the "fire plug" been "out of use" it would not have been used. Being defective when "turned on" it could not be "turned off" by reason of said defectiveness. Badgley v. St. Louis, supra; Sanderson v. Holland, 39 Mo. App. 233; Chipman v. Palmer, 77 N. Y. 51; Keys v. Gold Co., 53 Cal. 724; Gordon v. Peltzer, 56 Mo. App. 603.

*Marion C. Early* for respondent.

(1) Where there is any evidence which tends to establish the complaint or defense, from which the jury might reason-

ably infer the essential fact, the court should not take the case from the jury, and if there is any conflict in the evidence, the case must be submitted to the jury, provided there is sufficient evidence to sustain a verdict. Brown v. Railroad, 99 Mo. 310; Twohey v. Fruin, 96 Mo. 104. (2) Although the facts are not controverted, yet if different minds may reasonably draw therefrom different conclusions, the question is one of fact for the jury and not for the court, as one of law. Railroad v. Stone, 17 Wall. 657. (3) The contractor was the agent and servant of the city, acting under its express authority and control. Both were jointly liable. A city has no power to limit its liability by ordinance or charter, and an action against the city and the contractor jointly was proper. Donoho v. Vulcan Iron Works, 75 Mo. 401; Norton v. City 97 Mo. 537. (4) The liability of a corporation for the negligence of its servants is especially clear when it has received a consideration for the duty to be performed, or when, under permissive authority, it carries on a work from which it derives a profit. Aldrich v. Tripp, 23 Am. Rep. 434; Dillon on Municipal Corps., sec. 982.

VALLIANT, J.—Action for damages for flooding plaintiff's premises with water.

The suit was begun before a justice of the peace and went by appeal to the circuit court, where there was a verdict of the jury and judgment of court against both defendants for $387.50, from which the defendants have taken this appeal.

The facts which the testimony for plaintiff tended to prove are as follows: The defendant, Sippy, was under contract with the city of St. Louis to sprinkle streets and by the terms of the contract was to obtain the necessary water by tapping the fire plugs. For this purpose water tanks on wagons were used. The tank was supplied with a hose, to one end of which was affixed a brass coupling into which were cut threads to receive the screw at the fire plug. When the tank was to be

filled, the driver of the wagon would join the brass coupling to the screw at the plug, and then with a key with which he was furnished would open the plug, and by the pressure on the mains the water would be forced through the hose into the tank. When the tank was filled the driver would, with the key, close the plug and then unscrew the connection. The wagon, the tank, the brass coupling at the end of the hose, and the key, were the property of the defendant Sippy, and the driver was his servant. The fire plug and its appurtenances were the property of the defendant, the city of St. Louis.

There were city inspectors of the fire plugs, and under the rules and practice of the water department, when a plug was found to be out of repair or unfit for use it was painted red, which indicated to those whose duties might call them to use it, that it was unsafe and was not to be used, but when it was in good condition it was painted black. The drivers of the sprinkling wagons were informed of this regulation. The fire plug in this case was painted black.

Upon the occasion in question the driver had made the connection and the tank was filled. Then when he attempted to close the plug the key slipped off the knob on which it was designed to fit, and striking against the hose broke loose the coupling and a stream of water spouted into the plaintiff's premises, damaging his goods and the house. The knob on the fire plug was badly worn and the threads on the screw were also badly worn, and those defects caused the catastrophe; the defective knob caused the key to slip off, and the defective threads caused the connection to break. The threads in the brass receptacle at the end of the hose were in good condition and so was the key. The water spouted from the plug for about one hour, flooding the plaintiff's premises, and continued to flow until men from the water department arrived and shut off the main. All efforts up to that time to stop the flood had been unavailing. The key carried by the driver could not close the main, was not so designed; the driver had no authority to close a main. As

soon as the driver discovered that he could not close the plug with his key he went to the plaintiff's place of business and telephoned the condition to the city water department. After the water had been running a considerable time, some one in the crowd, which had been attracted to the scene, suggested to the driver that he back his wagon against the stream so as to divert it from the plaintiff's house and he did so, with that result.

The only evidence (if it was evidence) tending to charge Sippy with knowledge of the defects in the fire plug, was that of plaintiff who testified that after the accident he heard one of Sippy's drivers say to the driver of this wagon: "I knew that thing was out of order all the time," to which the other replied, "Why didn't you tell me, and not get me into this trouble."

There were instructions given and others asked and refused, but, for reasons presently shown, it will be unnecessary to discuss any of them except the peremptory instruction asked by defendant Sippy which the court refused.

Upon the part of the appellant city no error is pointed out in the instructions or elsewhere in the record. The city concedes that it has no cause of complaint, and that is very manifest. But there is nothing in the record to justify a verdict against defendant Sippy. He had no authority over the city water works or appliances and was not responsible for their condition. He would be liable if he negligently used the appliances or attempted to use them when he knew or should have known they were out of order. But there is no evidence that the driver was negligent in the work he did or that he or his master knew of the defect which wrought the injury. The plug was painted black and in the absence of notice to the contrary, that was evidence to him that it was in good condition. The testimony that another driver was heard to say to this one that he knew the plug was out of order, was clearly incompetent. Even if this driver had said that he knew it, it would be

incompetent because it was said after the event had occurred and not in the course of his business. The driver was defendant Sippy's agent to drive the wagon and work the sprinkling machine, but he was not his agent, after the work was done and his connection with it was ended, to make admissions to be used in a law suit. [Huffcut on Agency, p. 181; 1 Am. and Eng. Ency. Law, 695.]

Referring to the fact that the stream was diverted from the plaintiff's premises by backing the wagon against it, the respondent in his brief presents the point that defendant Sippy was negligent in not doing that sooner. If defendant should be charged with negligence because his negro driver, in the excitement of the occasion, had not exercised the ingenuity to alleviate the condition that a skillful executive might be expected to have done, he might answer that the plaintiff himself was not more resourceful of schemes; he was on the ground and if that was an act so obviously demanded, he should himself have proposed it. As soon as it was thought of and suggested to the driver, he acted upon it.

The peremptory instruction that the verdict should be for defendant Sippy should have been given.

The judgment as against the defendant city of St. Louis is affirmed, but as against the defendant Sippy is reversed.

All concur, except *Marshall, J.,* not sitting, having been of counsel.