JAMES T. MURPHY, Respondent, v. CLARK B. GILLUM, Appellant.

St. Louis Court of Appeals, February 1, 1898.

Damages: MAINTENANCE OF RESERVOIR: SEEPAGE ONTO ADJOINING LAND FROM UNUSUAL CAUSE: LIABILITY OF OWNER. In an action for damages to plaintiff's land from an alleged continuous seepage of water from a pond maintained by defendant on his premises adjoining thereto, where the testimony of defendant that the pond leaked only in the spring of the year, furnished some evidence that the defect was temporary and caused by the action of frost. *Held:* That this view should have been submitted to the jury, under the more recent decisions, that the owner of a reservoir will not be held for resulting damage from *vis major* or the act of God, or any unusual cause. Cooley on Torts, p. 676, and citations.

*Appeal from the Pike Circuit Court.*—HON. REUBEN F. ROY, Judge.

REVERSED AND REMANDED; all concurring, Judge BOND in the reversal of the judgment only.

*J. D. Hostetter* for appellant.

Having a legal right to construct and maintain a pond on his own premises, defendant is only answerable in damages in case he negligently constructs and

maintains it. *Hosher v. R. R.*, 60 Mo. 329; *Munkers v. R. R., Id.* 334; 24 Am. and Eng. Ency. Law, 904, 911; *Gray v. McWilliams*, 32 Pac. Rep. (Cal. 1893) 976.

The seepage from the pond being surface water, the owner of the servient estate had a right to resist its entry upon his premises, and could lawfully force it back from whence it came. *Hosher v. R. R., supra; Abbott v. R'y*, 83 Mo. 271; *Hoester v. Hemsath*, 16 Mo. App. 485.

In this case the seepage flowed in the natural direction, and it makes no difference if the quantity of water was increased or flowed with greater rapidity over the lower lands, defendant would not be liable in damages. Especially is this true where, as in this case, the improvement was not negligently constructed or maintained. 24 Am. and Eng. Ency. Law, 926.

*T. B. McGinnis* and *Clark & Dempsey* for respondent.

While appellant had the right to treat surface water as a common enemy, yet this does not warrant his collecting such waters into a large body and letting it escape, either in large quantities or by daily seepage, over and upon respondent's premises, and this without regard to the manner of keeping his pond. *Rychlicki v. St. Louis*, 97 Mo. 497; *Paddock v. Somes*, 102 *Id.* 226; *Carson v. Springfield*, 53 Mo. App. 289; *Stinson v. Fishell*, 61 N. W. Rep. (Iowa) 1063; *Water Co. v. Reeves*, 45 Ill. App. 285; *Drew v. Hicks*, 25 Pac. Rep. (Cal.) 563; *Parker v. Larsen*, 86 Cal. 236; *Jutte v. Hughes*, 67 N. Y. 267; *Mairs v. Real Estate Ass'n*, 89 *Id.* 498; *Hughes v. Anderson*, 68 Ala. 280; *Peck v. Herrington*, 109 Ill. 611; *Graham v. Keene*, 34 Ill. App. 87; *Livingston v. Mason*, 82 Ill. 387; *Stack v. East St.*

*Louis*, 85 *Id.* 377; *Rhoades v. Davidheiser*, 133 Pa. 226, and a pond in a town is a nuisance *per se. Yonkers v. Copcutt*, 140 N. Y. 12.

BIGGS, J.—The lands of the plaintiff and defendant join. The defendant is the owner of the dominant estate.. There is a slight depression in the surface of the land beginning on the defendant's premises and extending through those belonging to plaintiff. Prior to the ownership of either, the grantor of the defendant constructed a pond on his premises at the head of the depression. The defendant has maintained the pond. The embankment is near the line dividing the properties. It is claimed by the plaintiff that there is a continuous seepage of water from the pond; that the water thus escaping flows onto his premises, thereby rendering a small portion of the land unfit for any purpose. The present action is to recover for this alleged damage. The evidence introduced by plaintiff tended to prove his cause of action. The defendant conceded that in the spring of the year there was some seepage near the base of the embankment; and that to a limited extent the water thus escaping passed onto the land of the plaintiff resulting in slight damage to the land. The testimony of disinterested witnesses was to the same effect. The defendant offered to prove that the pond was constructed in the usual way and that due care had been exercised by him in maintaining it.

On the objection of the plaintiff this testimony was excluded. However counsel for plaintiff stated in open court that the plaintiff did not claim either that the embankment was faulty in construction, or that defendant had been negligent in maintaining it. The circuit court of its own motion instructed the jury as follows:

"If the jury find from the evidence in the cause that the water percolated through the dam of defendant's pond onto and upon plaintiff's land, so as to make said land of plaintiff's wet and less valuable, then the verdict should be for plaintiff, and the jury should assess his damages at such sum as is equal to the difference in the rental value of plaintiff's land, with such percolation thereon, and its value without such percolation from the time of plaintiff's purchase of said land to April 20, 1897. If the jury fail to find the facts as above mentioned the verdict should be for defendant."

The court refused the following instruction asked by the defendant:

"The court instructs the jury that defendant has a right to maintain a pond on his own premises, and unless the jury find from the evidence in the cause that the seepage, if any there be from said pond to and over the lands of plaintiff, results from the negligent and careless method of maintaining said pond, then plaintiff is not entitled to recover in this cause."

The jury returned a verdict for plaintiff for $25. Judgment was entered on the verdict and the defendant has appealed.

DAMAGES: maintenance of reservoir: seepage onto adjoining land from unusual cause: liability of owner. The amount involved in this suit is trivial, but the legal question presented is important and concerning which the courts of England and this country are not quite agreed.

The English doctrine was first declared in the case of *Rylands v. Fletcher*, L. R. 1, Exch. 265. In that case it appeared that the defendant had constructed a reservoir on his own land. The plaintiff was the owner of mines on neighboring land. Water from the reservoir found its way into an abandoned shaft which had been filled up with rubbish. This shaft led to plaintiff's

mines. The result was that the mines were flooded. The defendant was not aware of the existence of the shaft. It was not contended that the defendant had been negligent in constructing the reservoir. Mr. Justice BLACKBURN, who delivered the opinion said: "We think that the true rule of law is that the person who, for his own purposes, brings on his land and collects and keeps there anything likely to do mischief if it escapes, must keep it in at his peril; and if he does not do so, is *prima facie* answerable for all the damage which is the natural consequence of its escape. He can excuse himself by showing that the escape was owing to the plaintiff's default; or, perhaps, that the escape was the consequence of *vis major*, or the act of God; but as nothing of this sort exists here, it is unnecessary to inquire what excuse would be sufficient. The general rule, as above stated, seems on principle just. The person whose grass or corn is eaten down by the escaping cattle of his neighbor, or whose mine is flooded by the water from his neighbor's reservoir, or whose cellar is invaded by the filth of his neighbor's privy, or whose habitation is made unhealthy by the fumes and noisome vapours of his neighbor's alkali works, is damnified without any fault of his own, and it seems but reasonable and just that the neighbor who has brought something on his own property (which was not naturally there), harmless to others so long as it is confined to his own property, but which he knows will be mischievous if it gets on his neighbor's, should be obliged to make good the damage which ensues if he does not succeed in confining it to his own property. But for his act in bringing it there .no mischief could have accrued, and it seems but just that he should at his peril keep it there, so that no mischief may accrue, or answer for the natural and anticipated consequence. And, upon authority, this we think is

established to be the law, whether the things so brought be beasts, or water, or filth, or stenches."

The House of Lords concurred in this opinion (L. R. 3, H. L. 330). This case was supposed to apply what has been denominated the "wild beast doctrine" to all dangerous and unnatural structures placed or maintained on land. The opinion speaks of *"vis major* or the act of God," but it is not understood precisely what was meant by *"vis major"* until the decision in the case of *Nichols v. Marshland,* L. R. 10, Exch. 255. In that case the court explained the decision in *Rylands v. Fletcher.* Comparing the two cases, Judge COOLEY, in his work on torts, thus states the English rule: "Whoever gathers water into a reservoir, where its escape would be injurious to others, must at his peril, make sure that the reservoir is sufficient to retain the water which it gathered into it. But if thus sufficient in construction, the liability for the subsequent escape of the water becomes a question of negligence. The proprietor is not liable if the water escapes because of the wrongful act of a third party, or from *vis major,* or from any other cause consistent with the observance of due and reasonable care by him."

Where the question has been presented the courts of the United States (excepting Massachusetts and Minnesota) have repudiated the doctrine of the case of *Rylands v. Fletcher,* as formerly understood. Judge COOLEY has collected the cases, and thus states the American rule: "It is lawful to gather water on one's premises for useful and ornamental purposes, subject to the obligation to construct reservoirs with sufficient strength to retain the water under all contingencies which can reasonably be anticipated, and afterward to preserve and guard it with due care. For any negligence, either in construction or in subsequent atten-

tion, from which injuries result, parties maintaining such reservoirs must be responsible. We say nothing now of injuries arising from the flooding of lands by reservoirs, which by raising the water, must and do have that effect, but confining our attention to the case of reservoirs which cause injuries to the lower proprietors only as they break away, the American decisions seem to plant the liability on the ground of negligence, and the party constructing or maintaining ing the reservoir is held liable, not at all events, but as he might be if he had negligently constructed a house which fell down, or invited another into a dangerous place without warning."

Cooley on Torts, pp. 676, 677. This text is supported by the following authorities: *Radcliff's Executors v. Brooklyn*, 4 N. Y. 200; *Garland v. Towne*, 55 N. H. 55; *Everett v. Hydraulic Flume Co.*, 23 Cal. 225; *Marshall v. Welwood*, 33 N. J. L. *loc. cit.* 345; *Livingston v. Adams*, 8 Cowen, 175; *Losee v. Buchanan*, 51 N. Y. *loc. cit.* 487; *Hughes v. Anderson*, 68 Ala. 280; Whitaker's Smith on Negligence, pp. 274, 275. So far as we are advised, the question has not been passed on by any of the appellate courts of this state.

In the case at bar the instructions and the rulings as to the evidence clearly indicate that the circuit court tried and disposed of the case in accordance with the doctrine of *Rylands v. Fletcher*, as formerly understood. We have shown that the law of that case has been modified and explained to such an extent that it is no longer an authority anywhere. Both in this country and in England, it is now held to be lawful for a person to construct a reservoir or pond on his own premises, provided the embankment is made sufficiently strong "to retain the water under all contingencies which can reasonably be anticipated." In other words,

if such an improvement is made, the owner will not be held for resulting damage if the water escapes from unusual causes. Thus he would not be liable if the bursting of the dam was caused by an unprecedented rain storm, or if the water should escape by the unauthorized act of a third person, or from any other cause which could not have been guarded against by the observance of due care, that is extraordinary care, by him. Now, if the seepage of the water from the defendant's pond results from the imperfect construction of the embankment, then the defendant is liable. If it is impossible to construct a dam that will not leak, then in the circumstances the pond in question is a nuisance and the defendant must answer for maintaining it. There is a wide difference where the injurious consequences *may* and *must* result from the making of such an improvement. On the other hand, if the embankment in question was constructed with all possible care, and subsequently the defendant used all known means to keep it in a safe condition, but the leakage was produced by the action of the frost on the embankment, or by other independent agencies which could not be reasonably anticipated, then the defendant ought not to be held. Thus in the case of *Livingston v. Adams*, *supra*, there was evidence that the leak in the dam was produced by the operation of frost.

The court held that if this was true, then the defendant was not liable. This was evidently upon the theory that the damage was in consequence of *vis major* or the act of God. Here the defendant testified that the pond leaked only in the spring of the year. This furnished some evidence that the defect was temporary and was caused by the action of the frost. Under the foregoing authorities we think that this view of the case ought to have been submitted to the jury.

With the concurrence of the other judges, the judgment of the circuit court will be reversed and the cause remanded. Judge BLAND concurs. Judge BOND concurs in the reversal only of the judgment.