# McCORD RUBBER COMPANY, Appellant, v. ST. JOSEPH WATER COMPANY et al.

## Division One, May 25, 1904.

1. **BILL OF EXCEPTIONS: Identification.** It is proper for the clerk in making up his transcript to refer to the order of the court directing the bill of exceptions to be filed, and recite that in obedience to the order it was filed, and then say, "which bill of exceptions is in the words and figures following, to-wit." But it is never proper for the order of the court approving the bill and ordering it to be filed, to end with those words, nor are such words necessary for its identification as a part of the record.

2. **NEGLIGENCE: Evidence Connected With Allegations.** The evidence must connect the causes of the injury with the negligence charged in the petition.

3. **———: ———: Bursting of Water Pipe: Demurrer.** The petition alleged that the service pipe from the water company's main entered into codefendant's building through an exposed opening under the sidewalk which was not sufficiently protected from the cold to prevent the water freezing in the pipes, and that this exposure caused the water in the pipes to freeze on a certain cold night, bursting them, flooding the codefendant's cellar and that of plaintiff. But the evidence showed no freezing in the pipe there, but that the pipe from there to some distance in the cellar was buried three or four feet under the ground, and that the water escaped through a "fishtrap" located further on in the cellar, through which the water passed from the pipe through a meter. *Held*, that a demurrer to the evidence should have been sustained.

4. **———: ———: ———: Notice.** Where there is no evidence that a water company knew that a service pipe from its main to a building was exposed, and likely to burst from freezing, it can not be held guilty of negligence for not turning off the water which supplied the pipe.

5. **———: ———: ———: Broken Window.** Where plaintiff charges his injuries to the bursting of a service water pipe left exposed in an opening under a sidewalk which was not sufficiently protected from the cold, he can not be permitted to show that the freezing was in the pipe inside of the cellar and was due to the fact that a window light in the window between said opening and the cellar was broken, and thus exposed the pipe inside.

McCord Rubber Co. v. St. Joe Water Co.

6. ———: ———: ———: **Duty of Tenant.** The law does not require a tenant in taking possession of a rented building to take up the cellar floor and the ground under it to see if the water pipe there and the plumbing are in good condition.

7. ———: **Dangerous Agent: Water Pipe.** Water brought into a house through pipes by the method usually in use in cities is not to be treated as the bringing of a dangerous agent upon the premises.

8. ———: ———: ———: **Liability Regardless of Negligence.** One who brings water into his premises in pipes in the manner usual in cities, for the ordinary use of the occupants of the house, is not liable for injuries caused to an abutting owner by the bursting of the pipe and the flooding of his cellar, regardless of whether he is guilty of any negligence directly causing the accident. That is no such dangerous agent as makes him liable, whether negligent or not. [Distinguishing Rylands v. Fletcher, L. R. 3 H. L. 330.]

Appeal from Buchanan Circuit Court.—*Hon. W. K. James,* Judge.

AFFIRMED.

*Thomas J. Porter, Vinton Pike* and *Geo. W. Groves* for appellant.

(1) As water was not needed or used upon August's premises and as the service-pipe was left exposed to the elements so that the water was likely to freeze, burst the pipe, escape and do damage to the neighboring premises, the case is within the principle laid down in Rylands v. Fletcher, 4 Hurl. & C. 263, 3 H. L. 330. The water was likely to do mischief because it was likely to escape. When August notified the water company to turn off the water, both August and the company knew that it was unnecessary to allow the water connection to remain, and when August, supposing the company had complied with his request to turn it off, left the cellar doors open and the broken windows unreplaced, the element of imminent actual danger was added and a threatening nuisance existed. No proof of

negligence is required. Water Co. v. Olinger, 44 N. E. 238; Berger v. Gas Light Co., 62 N. W. 336. The latter case is understood to limit the doctrine of former cases in Minnesota adopting Rylands v. Fletcher, and states the rule which supports the plaintiff's case as follows: The essential condition of liability, without proof of negligence on the part of the owner, for injury to others by the escape of things kept by him on his premises, is that the natural tendency of things kept is to become a nuisance or to do mischief, if they escape. The authorities on the general subject are cited in 2 Jaggard on Torts, 833, et seq. August, and, after request to cut off, the water company, are held to have known the condition of the pipes on August's premises. In Tucker v. Railroad, 7 So. 124, plaintiff's husband was killed by the falling of defendant's lumber sheds, the supports of which had been weakened by trespasses of which defendant was aware. The court said: "The owner must know the condition of his property, and the company was aware of these trespasses, and the effect they had to weaken the buildings. It was its duty to warn the public of danger. There is, in our opinion, not the slightest doubt of the responsibility of the defendant company." The same principle is applied in Mc-Cauley v. Norcross, 155 Mass. 584, and cases cited. (2) The duty of defendants arose from the fact that the water connection was unnecessarily maintained. If August had use for the water and it was connected and used in the ordinary way, ordinary care only would have been required of him. It would not have been ordinary care for him to leave the pipe exposed to extreme cold, considering the damage likely to occur from freezing and bursting of the pipe. To leave the pipe thus exposed was maintaining on his premises something more than ordinarily dangerous, which imposed upon him more than ordinary care. "Where the consequence of negligence will probably be serious injury to others, and where the means of avoiding the infliction of injury

upon others are completely within the party's power, ordinary care requires almost the utmost degree of human vigilance and foresight." Cobb v. Railroad, 149 Mo. 60; Pollett v. Long, 56 N. Y. 200; Shrewsbury v. Smith, 12 Cash. 177; Brookfield v. Walker, 100 Mass. 94. In the Cobb case the defendant knew the condition of its property and the damage likely to occur from its use, and defendant was held negligent in law.

*Brown & Dolman* for respondent St. Joseph Water Company.

(1) Neither the order of record filing the bill of exceptions nor any other part of the record proper contains any identification of it. For this reason there "is no bill of exceptions," and there being no error suggested in the record proper, the judgment should be affirmed. Reno v. Fitz Jarrell, 163 Mo. 411; State v. Baty, 166 Mo. 561; State v. Weinegard, 168 Mo. 490; State v. May, 168 Mo. 122; Westheimer v. McInerny, 67 S. W. 725. (2) If the issue was properly tried as between the plaintiff and either defendant, the judgment should stand as to such defendant. Hunt v. Railroad, 89 Mo. 607; La Riviere v. La Riviere, 97 Mo. 84; Kleiber v. Railroad, 107 Mo. 254; State ex rel. v. Tate, 109 Mo. 265. (3) The case was submitted for plaintiff on such instructions as it chose to ask, nothing that it requested having been refused. "This is a civil case, and it is firmly established that in civil cases a failure to instruct on propositions not requested by counsel does not constitute error." Fearey v. O'Neill, 149 Mo. 477; Wheeler v. Bowles, 163 Mo. 409; Browning v. Railroad, 124 Mo. 71; Harmon v. Donoho, 153 Mo. 274. (4) The parties are bound by the positions assumed by them in their pleadings and instructions in the trial court. Having sought in its petition to recover upon the ground that the defendants, knowing that the conditions were such in the August cellar that the pipes were liable to

freeze, carelessly and heedlessly neglected to shut off the water, by reason of which the pipes froze; and having in its second instruction defined to the jury the degree of care required under the circumstances, plaintiff is now estopped from claiming that neither knowledge of the conditions or negligence is necessary to a recovery.   Horgan v. Brady, 155 Mo. 668.; Tomlinson v. Ellison, 104 Mo. 112; Tetherow v. Railroad, 98 Mo. 85; Jennings v. Railroad, 99 Mo. 399; Whitmore v. Supreme Lodge, etc., 100 Mo. 47; Becht v. Becht, 168 Mo. 532; Dunnigan v. Green, 165 Mo. 113; Womach v. St. Joseph, 168 Mo. 242.   (5)   We understand that, notwithstanding the theory of his pleadings and instructions, the plaintiff now claims that he was entitled to recover without proof of negligence, on the ground that one is so liable for injury to others by the escape of things kept by him on his premises when "the natural tendency of things kept is to become a nuisance or to do mischief if they escape."   This is supposed to be the doctrine of Rylands v. Fletcher, L. R., 3 H. L. 330, but it is not the law in the United States.   Brown v. Collins, 53 N. Y. 446; Lorce v. Buchanan, 51 N. Y. 476; Marshall v. Wellwood, 38 N. J. L. 339; Catron v. Nichols, 81 Mo. 80; Miller v. Martin, 16 Mo. 508; Haight's Questions and Answers, p. 374; Shearman & Redfield on Neg., 572; Everett v. Hydraulic, etc., Co., 23 Cal. 225; Wolf v. Water Co., 10 Cal. 541; 1 Thompson on Negligence, p. 101; Blyth v. Water Works Co., 11 Exch. 781; Fausto Cosulich v. Standard Oil Co., 122 N. Y. 118; Cooley on Torts, p. 570; Vieth v. Hope Coal & Salt Co., 51 W. Va. 96.

*Culver, Phillips & Spencer* for respondent August.

(1)   Where a person brings water upon his premises he is not liable for damages to an adjoining proprietor if it escape without his negligence; and the court did not err in so instructing the jury.   The English doc-

trine that a person bringing a dangerous element upon his own premises must keep it in at his peril, and is liable in damages if it escapes even without negligence on his part, does not obtain in this State nor in America; and Rylands v. Fletcher, 3 H. L. 330, relied upon by appellant, has been repudiated in many States. Murphy v. Gillam, 73 Mo. App. 487; Griffith v. Lewis, 17 Mo. App. 611; Brown v. Collins, 53 N. H. 446; Marshall v. Willwood, 38 N. J. L. 341; Losee v. Buchanan, 51 N. Y. 476; Everett v. Flume Co., 23 Cal. 225; Whitaker's Smith on Negligence (2 Ed.), p. 92, note 4; 1 Tiffany on Modern Law Real Prop., sec. 299; Haight's Questions and Answers, 374; Cooley on Torts, p. 570-573; Shearman & Redfield on Neg. (1 Ed.), secs. 510, 512, 513, 514. In Losee v. Buchanan, supra, the court, referring to Rylands v. Fletcher, said that the conclusion therein was "reached by the learned judge mainly by applying to the case the same rule of liability to which owners are subjected by the escape of their live animals." And the court proceeds as follows: "It is sufficient, however, to say that the law, as laid down in those cases, is in direct conflict with the law as settled in this country. (Angell on Water Courses, sec. 336; Tapham v. Curtis, 5 Vt. 371; Todd v. Cochell, 17 Cal. 97; Everitt v. Hydraulic. Co., 23 Id. 225; Shrewsbury v. Smith, 12 Cush. 177; Livingston v. Adams, 8 Cow. 175; Bailey v. Mayor of New York, 2 Hill 531; Pixley v. Clark, 35 N. Y. 524; Sheldon v. Sherman, 42 Id. 484.)"

(2) A litigant must try his case in the appellate court upon the same theory on which he submitted it below; and even if the trial court did err in instructing the jury for defendant August that he was not liable if he was not negligent, appellant can not complain on appeal if its own instructions submitted the case on the same theory. Even if Rylands v. Fletcher announces the law applicable to this case, and the defendant August was liable if, having permitted the water to be upon his premises, it escaped without his negligence, appel-

lant is in no position to complain here that the trial court instructed the jury on behalf of August that he was not liable if he was not negligent, because plaintiff's petition is grounded upon negligence, and its own instructions tell the jury that it was not entitled to recover unless August was negligent. The cases all hold that a party can not submit his case on one theory in the trial court and ask to have it reviewed on another theory in the appellate court. Minton v. Steele, 125 Mo. 181; Harper v. Moss, 114 Mo. 317; Trigg v. Taylor, 27 Mo. 245; Walker v. Owens, 79 Mo. 563; Tomlinson v. Ellison, 104 Mo. 105; Harte v. Seete, 104 Mo. 315; Whitascheck v. Glass, 46 Mo. App. 209; Garst v. Good, 50 Mo. App. 149; Mantz v. Maguire, 52 Mo. App. 136; Cody v. Vaughan, 53 Mo. App. 169; Queenback v. Arnold, 55 Mo. App. 286. Where appellant adopts a certain theory in his instructions, he can not complain in the appellate court that the theory was erroneous. Aultman v. Smith, 52 Mo. App. 351; Bank v. Armstrong, 62 Mo. 59. (3) Plaintiff can not complain that a correct instruction given for defendant is inconsistent with an erroneous instruction given in its behalf; and even if the instruction given for defendant is erroneous, plaintiff can not complain if an instruction given for it contains the same error. Stanley v. Union Depot Co., 114 Mo. 620; Tetherton v. Railroad, 98 Mo. 78; Kelley v. Railroad, 18 Mo. App. 159; Hanley v. Railroad, 114 Mo. 618. Plaintiff can not complain that a correct instruction given for defendant is inconsistent with an erroneous instruction given in its behalf. Christian v. Ins. Co., 164 Mo. 460; Sprague v. Sea, 152 Mo. 327.

VALLIANT, J.—This is an action for damages for the flooding of plaintiff's cellar with water, whereby a large quantity of its goods stored in the cellar were damaged.

The cause of action stated in the petition is as follows:

The plaintiff, a business corporation, occupies a house No. 111 South Third street, in the city of St. Joseph, in which it carries on the business of a wholesale dealer in rubber and felt footwear. One Pierce owned the building adjoining, No. 109, which was rented to, and at the date of the injury complained of was occupied by, defendant August, who was a merchant and who used it as a warehouse for the storage of goods. The defendant water company was a corporation which supplied the city with water, distributed through pipes and mains from reservoirs; one of its water mains is located in Third street in front of these buildings, and service-pipes from the mains carry water to the buildings. In front of the building occupied by defendant August is a stone sidewalk under which is an open area designed for the reception and storage of fuel; "that by reason of the great pressure upon the pipes in said locality, consequent upon the high elevation of the reservoirs of said water company, great care was required to provide pipes and water fixtures of sufficient strength and durability to withstand said pressure; that the service-pipe connecting the said street main or pipe with defendant Pierce's premises had been in use for more than twenty years; that said service-pipe passed from the street through an area opening under the pavement into said cellar and was not sufficiently protected from the cold to prevent the freezing of the water in the pipe in extremely cold weather and causing it to burst; that said August used said building as a warehouse only for the storage of goods and no heat was maintained in said premises, all of which was known to the defendant; that between the street main and the said premises of defendant Pierce there was a shut-off in the service-pipe under the control of all defendants and each of them, by which the water could be turned off and prevented from flowing through the service-pipe

into said premises; that said August did not use water in said premises; that all defendants knew that said water was not used or required in said premises and knew the danger and hazard of allowing the service-pipe to be and remain connected with the street main and the subsequent pressure of the water in said pipe, and with such knowledge defendants carelessly and heedlessly neglected. to shut off the water from said service-pipe and allowed said water service to be uselessly connected with said premises as aforesaid; that about the twenty-fourth of December, 1901, the weather became extremely cold, causing the water in said service-pipe to freeze and said pipe to burst, which allowed the water to escape therefrom and to fill the cellar of defendant Pierce's premises with water which overflowed and filled the basement cellar of plaintiff's premises in said basement cellar and injuring and damaging them to the amount of twelve thousand dollars; that said injury and damage was caused by the carelessness and negligence of defendants in failing to shut off the water service from the premises of defendant Pierce aforesaid and in allowing the same to be and remain unnecessarily connected with said premises under the conditions aforesaid, whereby the plaintiff has been damaged in the sum of twelve thousand dollars.''

The defendants answered separately, each a general denial, the water company adding that it had never had any connection or interest with its codefendants touching any of the matters stated in the petition and was therefore improperly joined with them in the suit.

At the trial the evidence for the plaintiff tended to prove as follows:

The situation and occupation of the buildings respectively were as stated in the petition. The area under the sidewalk is lighted through an iron grating two and a half or three feet wide, level with the sidewalk and next to the building. The wall of the cellar next to the open area under the sidewalk, is composed

of iron pillars closed with a wall of wood and glass. There is a door in this wall leading from the cellar into the area: It is part wood and part glass, the glass is of small window panes. On the morning of December 25, 1901, the cellar of the plaintiff's premises, in which was stored a large quantity of its merchandise, was discovered to be flooded with water which had apparently come from the cellar of the house occupied by defendant August; the water was from three to five feet deep. Investigation showed that in the cellar of defendant August there had been a bursting in a "fishtrap," which was a device to prevent any solid matter passing from the service-pipe into the meter. The design was for the water to pass from the pipe through the fishtrap into the meter, thence into the pipe again, and on to the elevator which it was to move. The water main was in Third street; the service-pipe led from the main to the area under the sidewalk, thence underground under the cellar floor to the rear of the building where the elevator was located. It was a two and a half inch pipe and laid several feet under ground under the cellar floor. The fishtrap was located in the cellar about twenty feet from the front, and the meter about eighteen inches beyond the fishtrap. The top of the fishtrap was from four to eight inches below the surface of the ground; it was also covered by the plank floor of the cellar, as was also the meter. When the water had been drained out of the cellar and the situation exposed to view it was discovered that the bottom or a part of the bottom of the fishtrap had broken off and the flood had come through it. There was no break in the service-pipe and none in the meter.

There was evidence tending to show that before the water had been drained out of the cellar, witnesses looking through the iron grating down into the area under the sidewalk saw the door leading from the area into the cellar partly open, and also that one of the panes of glass was out and the hole covered with paper. Plain-

tiff's expert witness testified that the cellar as constructed was an ordinarily warm one, and the water in the pipes under ordinary conditions not apt to freeze. He said the proper way to secure a meter was to place it below the freezing line underground or else box it and pack it; this meter was below the floor, but whether it had been boxed and packed as he suggested he could not tell from the condition it was in after the accident, as the water had torn the ground and floor away.

In October before the accident one of the employees of August told him that there was a leak of water in the elevator, and August directed him to go to the office of the water company and tell them to turn the water off as he had no use for it; the employee went as directed to the office of the water company, and delivered the message to a man there behind a desk, and the man said it would be attended to, but the water was never turned off. There was an appliance in the cellar by which the water could be shut off from the elevator, and the employee above mentioned did shut it off, and apparently neither August nor the employee gave the subject any further attention. There was a shut-off in the street by which the water could be shut off from the main to the service-pipe, but no one but the water company could use that; there was no means by which August could shut the water off from the service-pipe.

Plaintiff's testimony also tended to prove the amount of damage to his goods in the cellar.

At the close of the evidence, the plaintiff dismissed the suit as to Pierce, the owner of the building which August occupied.

The defendants August and the water company each asked an instruction in the nature of a demurrer to the evidence which the court refused.

The defendant offered no evidence.

The cause was submitted to the jury under instructions requested by the plaintiff to the effect that if the defendants knew that the water was not needed or used

on the premises, and August had requested the water company to shut it off, but the defendant ''carelessly and negligently permitted water to remain in said pipe and fishtrap,'' and the pipe or fishtrap burst by reason of the water freezing and flooded the plaintiff's cellar and damaged its goods, the plaintiff was entitled to recover; that defendants in respect of the control of the water on August's premises were required to use such care and take such precautions to prevent injury to plaintiff's goods as a reasonably prudent man would have taken if he had himself owned the plaintiff's goods; that if the only means of turning the water off was a shut-off in the street which was under the control of the water company alone, and both defendants knew that fact when the water was turned on, then the water company assumed to turn it off when requested by August, and August relied on it to do so, then August is not excused because the company failed to do so, although as between themselves the company might be liable to August, yet so far as the plaintiff is concerned the neglect was that of August as well as the company. The court before giving the first instruction modified it by adding the requirement that the jury should also find that the freezing was caused by the failure of August to use reasonable care to prevent it and defining reasonable care.

The substance of the instructions given at the request of the defendant August was that if he exercised over the water pipes the care that an ordinarily prudent man in the circumstances would be expected to exercise he was not liable; that if he did not have control of the shut-off in the street he was not liable for not turning the water off by that means; that if the jury did not find from the evidence that the accident was caused by freezing of water in the pipes, the defendant was not liable.

The instructions given at the request of the water

Vol 181 mo—44

company were to the effect: that the only negligence charged against it being that it knew that the water pipes in the building of August were in a dangerous condition and yet failed to turn off the water, unless the plaintiff proved that allegation this defendant was not liable; that the mere fact that August may have sent a messenger to the water company's office to request that the water be turned off and that the messenger did so request and the company failed to turn it off, would not alone render the water company liable.

There was a verdict for the defendant and judgment accordingly, from which the plaintiff appeals.

I.   At the threshold respondents make the suggestion that the bill of exceptions is not so identified that it can be recognized in this record.

On the record proper is shown an order of the court reciting that on that day the plaintiff presented his bill of exceptions, within the time appointed, which was signed and sealed by the judge and ordered to be filed and made a part of the record.   The point is made that the order of the court does not conclude with a recital to this effect, viz.: "which said bill of exceptions is in the words and figures following, to-wit." If such a recital had been in the order then the order itself would have been misleading and meaningless unless the bill of exceptions had been then and there copied into the court record.   That of course could not be done.   The office of the bill of exceptions is to set forth those proceedings at the trial which are not required to be entered in the record proper of the court's proceedings.   The bill of exceptions becomes a part of the record in the case when it is signed by the judge, ordered by the court to be filed, and then filed; but it is never spread on the record of the court, and no order of the court properly calls for it to be so spread.   It is suggested by respondents that a different rule is laid down in Reno v. Fitz Jarrell, 163 Mo. 411; State v. Baty, 166 Mo. 561; and State v. Weinegard, 168 Mo. 490; but that is a misunderstanding of

what is said in those cases. The word "record" as used in those opinions means the record in this court, which is a transcript of the record in the circuit court. In making up his transcript it is very proper for the circuit clerk to refer to the order of the court directing the bill of exceptions to be filed and recite that in obedience to the order it was filed and then say "which bill of exceptions is in the words and figures following, to-wit," and then copy the bill of exceptions in his transcript. That is what this court intended to say in those cases. The bill of exceptions is sufficiently identified in the case before us.

II.  The court ought to have sustained the demurrers to the evidence. Even if the plaintiff's evidence can be construed as tending to show any negligence on the part of either of the defendants, it does not tend to prove the negligence charged in the petition, and does not tend to prove that the injury resulted from the causes alleged in the petition.

The petition alleges that the service-pipe entered the building through an opening under the sidewalk which was not sufficiently protected from the cold to prevent the water freezing in the pipes. It was the exposure of the pipe passing through that opening that caused the freezing, according to the petition. To what extent, if any, the pipe was exposed in that opening is not very clear. The testimony of the witness Thompson was that the pipe "comes in from the street where the coal hole adjoins the wall at the pavement of the street—comes in from the street and down under the ground." Mr. McCord said: "The pipe comes into the building from the main probably two and one-half feet under the sidewalk and then an elbow comes this way to the cellar floor and then back through the house on the north side." The pipe was buried three or four feet under the cellar floor. But whether there was or was not any exposure of the service-pipe in that opening there was no freez-

ing in the pipe there and there was no freezing in the pipe anywhere. If it be conceded that the circumstances justified the inference of a freezing at all, it was a freezing in the fishtrap in the cellar, with which the exposed conditions of the service-pipe in the opening under the sidewalk had, so far as is shown by the evidence, nothing to do.

The gravamen of the petition is that, as there was no need of water in the building and as the service-pipe was exposed in the opening, and as there was a shut-off under the control of both defendants, and as those facts were known to both, it was negligence in both to leave the water turned on. The plaintiff's case is builded on the assumption of those facts and even if those facts made a case, the evidence does not connect either of the defendants with all of them; there is no evidence to show that the water company knew that the service-pipe was exposed, and the evidence does show that August had no right or power to shut the water off. There is, therefore, no evidence tending to show the water company guilty of negligence within the theory of the petition.

The only evidence tending to show August guilty of negligence, if it may be so considered, is the evidence tending to show that the door leading from the cellar to the opening under the sidewalk was found on that morning to be partly open, and one pane of glass broken out and the hole covered with paper. If that was negligence, it was not the negligence specified in the petition, and it certainly did not render the condition of the service-pipe in the opening more exposed. The case which the evidence tends to prove is that the water in the fishtrap froze because the door leading from the cellar into the opening under the sidewalk was left open. The defendants were not in court to answer that case.

Even if there was any evidence tending to show that there was anything wrong about the construction or placement of the fishtrap, August was not responsible for it. He was a mere tenant; those appliances were

buried under ground and under the cellar floor; he knew nothing about it. The law did not require him on taking possession of the building to have the cellar floor taken up and the ground under it dug up to see if the plumbing was in good condition and properly constructed.

The petition states that this pipe and fishtrap had been there more than twenty years and the evidence shows that there was a pressure of one hundred and ten pounds to the inch on the pipe and fishtrap; therefore it is just as reasonable to conclude that the fishtrap broke under the pressure from an infirmity incident to its long service.

III.   The plaintiff contends, however, that the defendants are liable regardless of whether they were guilty of any negligence directly causing the accident. This contention rests in the theory that one who brings into his premises anything that is liable to escape, and liable to inflict injury on his neighbors if it should escape, brings it there at his peril, and is responsible for any injury that it may cause.

That contention rests for its authority on the decision in Rylands v. Fletcher, L. R. 3 H. L. 330. In the briefs of the learned counsel for respondents, reference is made to a large number of authorities going to show that the doctrine of Rylands v. Fletcher has not been approved generally in America, and that it has been modified in England. Among the authorities so referred to are Griffith v. Lewis, 17 Mo. App. 605; Murphy v. Gillum, 73 Mo. App. 487; Cooley on Torts, 570; Losee v. Buchanan, 51 N. Y. 476; Brown v. Collins, 53 N. H. 442.

But in the facts, the case at bar is distinguished from Rylands v. Fletcher. In that case the defendants were owners of a mill and for their own use they caused to be constructed on land which they controlled a reservoir in which was accumulated a large volume of

water. Beneath the surface of the land there had formerly been a mine in which were shafts, some vertical and others horizontal. These shafts had been filled up with earth and rubbish. The defendants knew nothing of their existence. The weight of the water in the reservoir bore so heavily on the ground that it yielded to the pressure and the water made its way down the shafts and flooded the plaintiff's mines. It was held that the defendants were liable. The court said: "The defendants . . . might lawfully have used the close for any purpose for which it might in the ordinary course of the enjoyment of the land be used; and if, in what I may term the natural user of that land, there had been any accumulation of water, either on the surface or underground, and if, by the operation of the laws of nature, that accumulation of water had passed off into the close occupied by the plaintiff, the plaintiff could not have complained that that result had taken place. . . . On the other hand, if the defendants, not stopping at the natural use of their close, had desired to use it for any purpose which I may term a non-natural use, for the purpose of introducing into the close that which in its natural condition was not in or upon it, for the purpose of introducing water either above or below ground in quantities and in a manner not the result of any work or operation on or under the land—and if in consequence of their doing so, or in consequence of any imperfection in the mode of doing so, the water came to escape and to pass off into the close of the plaintiff, then it appears to me that that which the defendants were doing they were doing at their own peril." There is a wide difference between a great volume of water collected in a reservoir in dangerous proximity to the premises of another and water brought into a house through pipes in the manner usual in all cities, for the ordinary use of the occupants of the house. Whilst water so brought into a house can not literally be said to have come in in the course of what

might be called in the language above quoted of the Lord Chancellor "natural user" of the premises, yet it is brought in by the method universally in use in cities and is not to be treated as an unnatural gathering of a dangerous agent. The law applicable to the caging of ferocious animals is not applicable to water brought into a house by pipes in the usual manner.

The learned counsel for the plaintiff tried their case on the theory that the defendants were negligent, and that is the only theory on which they could have tried it.

Complaint is made of the instructions, but we do not consider it material to the merits of the case to discuss them, because in no view of the evidence is either one of the defendants liable.

The judgment is affirmed.

All concur except *Robinson, J.,* absent.