CHRISTIAN L. BEHLE AND MARY C. BEHLE, HIS WIFE, RESPONDENTS,
v. SHELL PIPE LINE CORPORATION, A CORPORATION, APPELLANT.*
—17 S. W. (2d) 656.

St. Louis Court of Appeals.   Opinion filed June 4. 1929.

*Corpus Juris-Cyc References: Damages, 17CJ, section 465, p. 1121, n. 40; Negligence, 45CJ, section 782, p. 1217, n. 36.

*Koerner, Fahey & Young* for appellant.

*Wurdeman, Stevens & Hoester* for respondent.

SUTTON, C.—This is an action for damages caused to plaintiffs' farm land, consisting of fifty-six and one-half acres situated in Florissant Valley, in St. Louis county, caused by crude oil escaping from defendant's pipe line, which passes through said land. Defendant had previously secured a right of way through said land to lay, construct, reconstruct, replace, renew, maintain, repair, and operate a pipe line for the transportation of oil, petroleum, or any of its by-products, and had laid its pipe line through said land, and was transporting crude oil by means of said pipe line at the time the injury occurred. The amount paid for the right of way was forty-two dollars. It was admitted that the oil escaped through a leak or break in the pipe line, and thus spread over and saturated or contaminated a portion of plaintiffs' land.

Plaintiffs allege in their petition that the defendant negligently permitted large quantities of crude oil to escape from its said pipe line; that said oil escaping from said pipe line seeped through and spread over plaintiffs' land, covering more than two acres thereof; that said land was so thoroughly saturated with said oil that it has been rendered worthless for agricultural purposes; that as a result plaintiffs have been and are deprived of the right to the use and enjoyment of the land so contaminated for agricultural purposes, and that the value of same has been greatly depreciated; that said land so contaminated is damaged to the extent of $1000 per acre, and that there is a consequential damage to the remainder of the farm to the extent of $999. It is then alleged that plaintiffs have been damaged by reason of the premises in the total sum of $2999, for which judgment is prayed.

The trial, with a jury, resulted in a verdict and judgment in favor of plaintiffs for $2500, and the defendant appeals.

Defendant assigns error upon the refusal of its demurrer to the evidence, and also urges the excessiveness of the verdict.

According to plaintiffs' evidence, the oil escaping from the break or leak in defendant's pipe line ran over about two and thirteen hundredths acres of plaintiffs' land. There were about five more acres of the land contaminated in process of cultivation. The oil ran over the land leaving narrow strips here and there, so that in process of cultivation the oil was carried onto the ground next to such strips. The land ordinarily produced twenty-eight bushels of wheat and sixty-five bushels of corn to the acre. The average price of wheat was $1.60 per bushel, and the average price of corn was eighty-five cents per bushel. The land was valley land, and very fertile and productive. Alfalfa, clover, tomatoes, and potatoes grew well on the land. It produced on an average one hundred and twenty-five bushels of potatoes, and $200 worth of tomatoes, to the acre. Four cuttings of alfalfa per season were obtained, the value of which was $125 per acre. In the opinion of the witnesses, the land contaminated by the oil was worth $500 per acre for agricultural purposes prior to its contamination. It was shown that the land contaminated was rendered unfertile and unproductive; that the two and thirteen hundredths acres over which the oil flowed from the pipe line was practically destroyed and rendered valueless for agricultural purposes; and that the five acres contaminated in process of cultivation was affected to the extent of $200 per acre. The whole tract of fifty-six and one-half acres was used exclusively for agricultural purposes. There was a dwelling house and barn on the tract used in connection with the farm. There was testimony that the entire farm was worth $30,000 prior to the contamination by the oil, and $25,000 afterwards, for agricultural purposes. It was also

shown that the land had no prospective value for purposes other than agricultural on account of its location near the city of St. Louis.

The ground on which defendant bases its insistence that its demurrer to the evidence should have been sustained is that no specific negligence on the part of defendant was shown.

It is by no means certain that a pipe line company, which transports a deleterious foreign substance, such as crude oil, in large quantity, through agricultural lands, and allows it to pour out over, and devastate, the lands adjacent to its line, ought not be held liable, regardless of negligence, under the rule announced in Fletcher v. Rylands (L. R.), 1 Exch. 265. In that case, which is the leading case on the subject, the defendant had constructed a reservoir on his premises, and the water from the reservoir escaped and damaged the plaintiff. The court, in disposing of that case, said:

"The person whose grass or corn is eaten down by the escaping cattle of his neighbor, or whose mine is flooded by the water from his neighbor's reservoir, or whose cellar is invaded by the filth of his neighbor's privy, or whose habitation is made unhealthy by the fumes and noisome vapors of his neighbor's alkali works, is damnified without any fault of his own; and it seems but reasonable and just that the neighbor, who has brought something on his own property which was not naturally there, harmless to others so long as it is confined to his own property, but which he knows to be mischievous if it gets on his neighbor's, should be obliged to make good the damage which ensues if he does not succeed in confining it to his own property. But for his act in bringing it there no mischief could have accrued, and it seems but just that he should at his peril keep it there so that no mischief may accrue, or answer for the natural and anticipated consequences. And upon authority, this we think is established to be the law whether the things so brought be beasts or water, or filth or stenches."

It appears that the rule announced in that case has been followed, with or without modification, by many of the courts of this country. [Brennan Construction Co. v. Cumberland, 29 App. D. C. 554; Berger v. Minneapolis Gaslight Co., 60 Minn. 296; Ottawa Gas Light & Coke Co. v. Graham, 28 Ill. 73; Kinnaird v. Standard Oil Co., 89 Ky. 468, 12 S. W. 938; Shipley v. Fifty Associates, 106 Mass. 194; Gorham v. Gross, 125 Mass. 232; Lawson v. Price, 45 Md. 123; Pottstown Gas Co. v. Murphy, 39 Pa. 257; Columbus Gas Light & Coke Co. v. Freeland, 12 Ohio St. 392.] If this rule was not approved by our Supreme Court in McCord Rubber Co. v. St. Joseph Water Co., 181 Mo. 678, 81 S. W. 189, it certainly was not disapproved. But whether this rule is applicable under the facts in the instant case, we need not, and do not, decide; for we entertain no doubt that the plaintiffs in the instant case were entitled to go to

the jury on presumptive or inferential negligence. [Taylor v. St. Joseph Gas Co., 185 Mo. App. 537, 172 S. W. 624; Sipple v. Laclede Gas Light Co., 125 Mo. App. 81, 1. c. 90, 102 S. W. 608.] The defendant's pipe line crossed the plaintiffs' premises on its right of way under ground. Its operation and maintenance was under the exclusive control and management of the defendant. Plaintiffs were not concerned with it in any way. The evidence of specific negligence, or the want of it, was peculiarly, if not exclusively, within the knowledge and power of the defendant. To say that the plaintiffs in this case, and others under like circumstances, must prove specific negligence to recover their damages, would put them at the mercy of pipe line companies, and allow such companies to devestate the lands adjacent to their lines with practical impunity. We have examined the Missouri cases relied on by defendant, and find them distinguishable on their facts from the present case.

In support of its insistence that the verdict is excessive, defendant argues that the petition fixed the damage to the two and thirteen hundredths acres, overflowed by the oil, at $1000 per acre; that the testimony confined that damage to a total of $1065; that the limit of the amount, over and above $1065, is $999, alleged in the petition as consequential damages; and that the verdict for $2,500 is therefore excessive in the sum of $436. In other words, defendant argues that the damage to the two and thirteen-hundredths acres was shown to be not more than $500 per acre, and that the damage to the rest of the farm was limited by the petition to $999. We think this is a rather strict and technical construction of the petition. It will be observed that the total damage alleged, and for which recovery is prayed, is $2999. There can be no question that the evidence was ample to show damage to the amount of $2500, awarded by the jury, which is within the total damage alleged and prayed for. Moreover, defendant did not ask an instruction restricting the jury to the allowance of $999 for damage to the rest of the farm other than the two and thirteen-hundredths acres. Nor did the defendant object to the testimony showing the damage to the entire farm, for agricultural purposes, or to the five acres contaminated in process of cultivation, on the ground that such damage was not recoverable under the petition, or on any other ground. Of course, the damage to the entire farm resulting from the destruction or impairment of the fertility of an irregular-shaped area of land in the farm might be greatly more than the damage to such area.

Defendant further urges that the court committed error in admitting testimony showing the full value of the farm, whereas the testimony should have been confined, under the allegations of the petition, to the value of the farm for agricultural purposes. However, an examination of the record does not disclose any testimony

admitted relative to the value of the farm other than for agricultural purposes.

The commissioner recommends that the judgment of the circuit court be affirmed.

PER CURIAM:—The foregoing opinion of SUTTON, C., is adopted as the opinion of the court. The judgment of the circuit court is accordingly affirmed. *Haid, P. J.,* and *Becker* and *Nipper, JJ.,* concur.