**INTERSTATE SASH & DOOR CO., Plaintiff-Appellant, v. CLEVELAND (CITY), Defendant-Appellee.**

Ohio Appeals, Eighth District, Cuyahoga County.

No. 20429. Decided February 3, 1947.

Oviatt & Oviatt, Cleveland, for Plaintiff-Appellant.
Lee C. Howley, Director of Law, Cleveland, C. L. Mollison, for Defendant-Appellee.

## OPINION

By HURD, J.:

Appellant filed its petition in the Court of Common Pleas setting up two causes of action against the appellee, The City of Cleveland. The first cause of action is based on the theory of trespass, the second cause of action is based upon the theory of negligence with five separate specifications thereof and an allegation of notice.

The appellee filed a demurrer to the first cause of action and an answer to the second cause of action. The trial court sustained the demurrer. Appellant not desiring to plead further, judgment was rendered against the appellant on the first cause of action, and this appeal was taken on questions of law.

A summation of the allegations of the first cause of action construed most favorably to the appellant is as follows:

The appellant was the lessee and in possession of a tract of land improved with a large warehouse located on Riverbed Avenue. This land extends up the hillside from Riverbed Avenue to West 24 Street. In other words, Riverbed Avenue is in the "Flats" so-called, and West 24 Street is on the upper level with a steep hill leading from one to the other.

Appellant alleges that the City of Cleveland some fifty odd years ago, installed a water pipe line on West 24 Street; that West 24 Street at the point in question, terminates against the Superior High Level Bridge near its western approach; that some time ago the City of Cleveland filled in a large quantity of dirt and stones on a portion of West 24 Street in question, which portion of the street is unused; that the dirt and stones piled on the street at this point and over the old water pipe line was several feet in thickness; that West 24 Street at this point was on the brink of this steep hill leading down to appellant's warehouse.

On January 31, 1945, the water pipe line on West 24 Street at the point where the large pile of earth and stones was located, broke loose and precipitated a large quantity of boulders and stones down the hillside and against the warehouse occupied by the appellant; that the large stones broke through the brick walls and permitted water, stones and mud to flow into appellant's warehouse which was filled with kilned-dried sashes and doors and finishing material. The warehouse in question is over 300 feet in length and contained a valuable stock of merchandise. The mud, stones and debris flowed the entire length of the warehouse and caused damage alleged to amount to about $35,000.00.

It is the claim of the appellant in this first cause of action that there was an invasion of its property constituting a trespass and further that the City of Cleveland by maintaining this old pipe line located on the brink of the hill and by piling a large quantity of dirt and stones thereon created a situation that rendered the City of Cleveland liable for the damage sustained without allegation of proof of negligence.

It should be understood that a consideration of the ruling of the trial court on this first cause of action does not in any way affect the rights or claims of the plaintiff appellant in respect of the second cause of action based on negligence to which an answer has been filed by the appellee.

The single question presented is whether or not the Common Pleas Court erred in sustaining the demurrer to the first cause of action predicated upon the theory of trespass.

The appellant relies upon the authority of the cases of the City of Barberton v Miksch, 128 Oh St 169; City of Mansfield v Balliet, 65 Oh St 451, and Rylands v Fletcher, L. R. 1, Exch. 265, affirmed by the House of Lords, L. R. 36, L. Chs. 330-339.

The pertinent paragraphs of the syllabus of City of Barberton v Miksch, are as follows:

"2. In the construction and maintenance of a system for supplying water to its inhabitants, a municipality acts in a proprietary capacity.

"3. Casting water upon the land of another by seepage or percolation resulting from the construction and maintenance of a reservoir by a municipality, as a part of its system for supplying water to its inhabitants, constitutes a trespass.

"4. Liability for damage proximately resulting from such trespass is not dependent upon negligence."

In a supplemental brief, counsel for appellants state that the doctrine announced in Barberton v Miksch, supra, is mere-

ly a statement of the principle announced in Rylands v Fletcher, supra, wherein it was held that a party maintaining a reservoir of water which injures another by breaking away in consequence of original defects of which he was ignorant, is responsible for the injury, though chargeable with no negligence. Counsel then quote from the opinion of Mr. Justice Blackburn in part as follows:

"We think that the rule of law is that the person who, for his own purposes, brings on his land and collects and keeps there anything likely to do mischief if it escapes, must keep it in at his peril; and if he does not do so, is prima facie answerable for all the damages which is a natural consequence of its escape. * * *

"The person whose grass or corn is eaten down by the escaping cattle of his neighbor, or whose mine is flooded by water from his neighbor's reservoir, or whose cellar is invaded by the filth from his neighbor's privy, or whose habitation is made unhealthy by the fumes and noisesome vapors of his neighbor's alkali works, is damnified without any fault of his own, and it seems to be reasonable and just that the neighbor who has brought something on his own property which was not naturally there, but which he knows to be mischievous if it gets on his neighbor's should be obliged to make good the damage which ensued if he does not succeed in confining it to his own property. But for his bringing it there, no mischief could have accrued, and it seems but just that he should at his peril keep it there so no mischief may accrue, or answer for the natural and anticipated consequences and, upon authority this, we think, is established to be the law whether the things so brought be beasts or water or filth or stench."

According to the great weight of authority in this country and in England, where Rylands v Fletcher was decided in 1868, the rule set forth in that and similar cases is not applicable to underground pipes supplying water to inhabitants of a municipality. On the contrary, liability in such cases is dependent upon negligence, not trespass as instance the following:

"Water in an underground pipe is not such dangerous instrumentality as to require a person so conveying it to confine it at his peril, and no recovery can be had for an injury to property caused by the leakage or bursting of an underground water pipe unless negligence in the construction of maintenance of the pipe is shown. Blyth v Birmingham Water-

works, 11 Exch (Eng) 781, 2 Jur. N. S. 333; Green v Chelsea, 70 L. T. N. S. (Eng) 547; Mann v Henderson, 154 Ky. 154, 156 S. W. 1063; Littlefield v Newport Water Co., 110 Me 129; 86 Atl. 482; McCord Rubber Co. v St. Joseph Water Co., 181 No. 678, 81 S. W. 189; Terry v New York, 8 Bosw. (N. Y.) 504; Cincinnati v Renner, 33 O. C. C. Rep. 189; Esberg Cigar Co. v Portland, 34 Ore. 282, 55 Pac. 961, 75 Am. St. Rep. 651, 43 L. R. A. 435; Morgan v Duquesne, 29 Pa. Sup. Ct. 100; Paris v Tucker, (Texas) 93 S. W. 233. See also, Cattle v Stockton Waterworks Co., L. R. 10, Q. B. (Eng.) 453; Rice v St. Louis, 165 Mo. 636, 65 S. W. 1002 * * * . 41 Ann. Cas. American & English, 1916 C. P. 1050."

In McCord Rubber Co. v St. Joseph Water Co., supra, it was said in part:

"The plaintiff contends, however, that the defendants are liable regardless of whether they were guilty of any negligence directly causing the accident * * *. That contention rests for its authority on the decision in Rylands v Fletcher, L. R. 3 H. L. (Eng.) 330. * * * There is a wide difference between a great volume of water collected in a reservoir in dangerous proximity to the premises of another and water brought into a house through pipes in the manner usual in all cities, for the ordinary use of all the occupants of the house. Whilst water so brought into a house cannot literally be said to have come in in the course of what might be called * * * 'natural user' * * * yet it is brought in by the method universally in use in cities and is not to be treated as an unnatural gathering of a dangerous agent."

To the same effect see 14 A. L. R. 555 and cases therein cited. See also Simon v City of New York, 143 N. Y. S. 1043, wherein the court said in part:

"A municipality is not an insurer of its water or sewer system any more than of its streets. It is required only to use reasonable care in establishing and maintaining such a system."

See also: A. J. Brown & Son, Inc. v City of Grand Rapids, 265 Mich. Rep. 465, decided by the Supreme Court of Michigan, December, 1933, 4th paragraph of syllabus as follows:

"4. Municipality is not insurer of its water system but is required to use reasonable care in establishment and maintenance of system."

The case of **City of Cincinnati v Renner, supra,** decided by the Court of Appeals of the First District and affirmed by our Supreme Court without opinion in **86 Oh St 341,** holds as follows:

"A municipal corporation is not controlled by the principle that one who collects and keeps anything likely to do mischief if it escapes, does so at his peril where it is acting under a legislative authority and without any showing of negligence."

In that case there was an escape of water by reason of a broken water pipe. It was held that the principle of Ryland v Fletcher, supra, was not applicable; that the liability of the city, if any, was founded in negligence, the court saying at page 191:

"The legislature authorized the City of Cincinnati to construct and maintain water pipes in the streets of the city and it can only be answerable in damages for their construction and maintenance by reason of some negligent act committed or omitted."

In the comparatively recent case of **Taylor v Cincinnati, 143 Oh St. 426,** later approved and followed in the case of **Metzger, Appellant, v Ohio, Pennsylvania & Detroit R. R. Company et al, 146 Oh St 406,** the court distinguishes between an absolute nuisance for which strict liability without fault is imposed by law and a qualified nuisance or nuisance dependent upon negligence which consists of anything lawfully but so negligently or carelessly done or permitted as to create a potential and unreasonable risk upon it which in due course results in injury to another.

In this connection it is interesting to note the following excerpt from the opinion of Hart, J. in this case at pages 435-36 as indicating the trend of modern judicial thought concerning the doctrine in the case of Rylands v Fletcher, supra:

"A person who, for his own purposes, brings on his lands and keeps there anything likely to do mischief, if it escapes, must keep it at his peril; and if he does not confine it he is prima facie answerable for all the damage which is the natural consequence of its escape. Street in his Foundations of Legal Liability, Vol. 1 Chap. 5, designates such acts as 'agents of harm' and says that these are cases where one may be held liable for harm not directly done by himself, but by some creature of his for which he is answerable. This is the doctrine of the early case of Rylands v Fletcher (1868) L. R. 3 H. L.

330, 37 L. J. Ex. 161, 19 L. T. Rep. 220, 33 J. P. 70, which, with modifications has been adopted as the common-law rule in many jurisdictions of this country. The rule in question which is being gradually narrowed in scope, has been considered and in proper cases, applied to situations involving the maintenance of artificial reservoirs for the collection of water as distinguished from mill dams across flowing streams; the storing or use of dangerous combustibles, such as dynamite, nitroglycerin, gun powder, etc., blasting operations on one's own land adjacent to the premises of another; and trespasses due to the escape of wild animals as distinguished from domestic animals. This rule was recognized and applied by this court to the handling of explosives in **Bradford Glycerine Co. v St. Marys Woolen Mfg. Co., 60 Oh St 560, 54 N. E. 528, 71 Am. St. Rep. 740, 45 L. R. A. 658**; to the explosion of an unguarded, unexploded bomb in a public park in **City of Cleveland v Ferrando, a minor, 114 Oh St 207, 150 N. E. 747**; to blasting operations in **City of Tiffin v McCormack, 34 Oh St 638, 32 Am. Rep. 408**, and in **Louden v City of Cincinnati, 90 Oh St 144, 106 N. E. 970, L. R. A. 1915, E. 356 Ann. Cases 1916 C. 1171.** See also **Harris Admrs. v City of Findlay, 59 Oh Ap 375, 18 N. E. (2d) 413.**"

Upon analysis of the authorities cited and quoted in the foregoing discussion and applying the principles thereof to the issues of law raised on this appeal, we conclude that on the authority of City of Barberton v Miksch, supra, (see paragraph 1 of syllabus) the City of Cleveland in furnishing water to its inhabitants is acting in a proprietary capacity.

We further conclude that in all other respects we must distinguish between the allegations of fact of the instant case and the facts and circumstances of City of Barberton v Miksch; City of Mansfield v Balliett, and Rylands v Fletcher, supra.

The wide difference between the impounding of a great body of water in a large reservoir by a municipality from whence there was a continual and permanent flow of water upon lands of·another by seepage and percolation over a period of years (Barberton v Miksch) and the use of underground pipes in city streets for the purpose of supplying water to the inhabitants of a metropolitan area, such as the City of Cleveland under statutory authority, is so obvious and so marked as to require no extended comment.

Likewise, the case of City of Mansfield v Balliett must be distinguished where there was a taking of land due to pollution of a stream by casting sewage therein.

Finally, the instant case is not one, as we view it, which comes within the principle of Rylands v Fletcher, supra, of

"bringing on to a person's land and collecting there anything likely to do mischief if it escapes so that the person who does so must keep it in at his peril and if he does not do so is prima facie answerable for all the damages which are a natural consequence of its escape."

In other words, it seems to us that to apply the doctrine of the escape from one's land of something that is inherently dangerous, whether animate or inanimate, to a system of pipe lines conducting water underground on city streets, is carrying the ancient doctrine beyond all reasonable limits.

We agree with the trial court in this case in the conclusion that the facts alleged in the first cause of action do not constitute an absolute nuisance. We think that the most that can be claimed under the allegations of the first cause of action is a qualified nuisance where negligence must be alleged to create liability.

Holding these views it follows that the judgment of the court of common pleas in sustaining the demurrer to the first cause of action must be affirmed.

SKEEL, PJ, and MORGAN, J, concur.