[No. 33897.   *En Banc.*   June 27, 1957.]

M. MAURICE KIND *et al., Respondents,* v. THE CITY OF
SEATTLE, *Appellant.*[1]

*A. C. Van Soelen, C. C. McCullough,* and *George H. Holt,*
for appellant.

*Solie Ringold, Hoof, Shucklin & Harris, Geo. A. Meagher,
Moriarty, Olson & Campbell, Jack Steinberg,* and *Clarke,
Clarke & Albertson,* for respondents.

ROSELLINI, J.—The plaintiffs in these actions own and
operate business properties in the vicinity of First avenue
south and Yesler way, in Seattle. On January 17, 1954, a

[1]Reported in 312 P. (2d) 811.

twenty-inch cast iron water main owned, maintained and operated by the defendant city burst at the intersection of First avenue and Yesler way and flooded the properties of the plaintiffs. Their suits against the city were consolidated and tried to the court, which found that the negligence of the city was not proved. The cause of the break of the water main was not shown. The court concluded that the city was liable, regardless of fault, and entered judgments in favor of the plaintiffs.

The case is before this court on the findings of fact. According to these findings, the pipe in question was laid in the year 1890, and was designed to last one hundred years; it was manufactured according to the best known engineering methods; was installed in accordance with good engineering practices; was laid upon an adequate foundation in original ground; and was subsequently covered over with a fill to a depth of approximately 6.8 feet. Portions of the pipe were inspected whenever they were exposed for other purposes and were found to be in reasonably good condition. The water was shut off as soon as possible after the break occurred. The pipe was strong enough to stand the pressure exerted upon it at the time of the break and was within the standard specifications. The cause of the break was unknown.

The finding of fact most pertinent to this appeal reads as follows:

"No negligent act on the part of the city has been shown. The break of the water main in question does not ordinarily occur unless some person connected with manufacture, installation or operation has been at fault. The defendant city has endeavored, insofar as reasonably possible to determine the cause of the break, and such investigation so far as it has gone has shown that the city acted with due care in the operations examined."

It is the contention of the appellant that the doctrine enunciated in *Rylands v. Fletcher*, L. R. 1 Exch. 265, decided in 1866, and affirmed two years later in *Fletcher v. Rylands*, L. R. 3 H. L. 330, upon which the trial court based its decision, should not be applied to the facts of this case.

The defendant in that case had caused a reservoir to be constructed on his land to provide water for his mill. The water seeped through an abandoned mine shaft into the plaintiff's mine, causing damage. Justice Blackburn, speaking for the Court of Exchequer Chamber, said:

"The person who for his own purposes brings on his lands and collects and keeps there anything likely to do mischief if it escapes, must keep it in at his peril, and, if he does not do so, is prima facie answerable for all the damage which is the natural consequence of its escape. He can excuse himself by showing that the escape was owing to the plaintiff's default; or perhaps that the escape was the consequence of vis major, or the act of God; but as nothing of this sort exists here, it is unnecessary to inquire what excuse would be sufficient. The general rule, as above stated, seems on principle just. The person whose grass or corn is eaten down by the escaping cattle of his neighbour, or whose mine is flooded by the water from his neighbour's reservoir, or whose cellar is invaded by the filth of his neighbour's privy, or whose habitation is made unhealthy by the fumes and noisome vapours of his neighbour's alkali works, is damnified without any fault of his own; and it seems but reasonable and just that the neighbour, who has brought something on his own property which was not naturally there, harmless to others so long as it is confined to his own property, but which he knows to be mischevious if it gets on his neighbour's, should be obliged to make good the damage which ensues if he does not succeed in confining it to his own property. But for his act in bringing it there no mischief could have accrued, and it seems but just that he should at his peril keep it there so that no mischief may accrue, or answer for the natural and anticipated consequences. And upon authority, this we think is established to be the law whether the things so brought be beasts, or water, or filth, or stenches."

This court has applied the doctrine in cases where harm has befallen a plaintiff as a result of blasting operations carried on by the defendant. *Foster v. Preston Mill Co.*, 44 Wn. (2d) 440, 268 P. (2d) 645 (strict liability limited to the risks inherent in blasting operations); *Patrick v. Smith*, 75 Wash. 407, 134 Pac. 1076; *Schade Brewing Co. v. Chicago, Milwaukee & Puget Sound R. Co.*, 79 Wash. 651, 140 Pac. 897. We have found no case in this jurisdiction where liability has been imposed upon a municipal corporation, regardless

of fault, for damage resulting from a broken water main.

The respondents call our attention to the case of *Bridge-man-Russell Co. v. Duluth,* 158 Minn. 509, 197 N. W. 971, wherein the doctrine of *Rylands v. Fletcher, supra,* was applied in favor of a plaintiff whose property had been damaged as a result of a bursting water main. In choosing to align itself with the courts which have approved the doctrine (admittedly a minority), the court in that case said:

"If a break occurs in the reservoir itself, or in the principal mains, the flood may utterly ruin an individual financially. In such a case, even though the negligence be absent, natural justice would seem to demand that the enterprise, or what really is the same thing, the whole community benefited by the enterprise, should stand the loss rather than the individual. It is too heavy a burden upon one. The trend of modern legislation is to relieve the individual from the mischance of business or industry without regard to its being caused by negligence."

Those courts which oppose the application of the doctrine generally adopt the theory that the imposition of liability without fault discourages enterprise and the most beneficial use of property.

Whether the doctrine of *Rylands v. Fletcher, supra,* should properly be applied to cases of this nature is a question which we need not decide at this time, since the decision of the trial court can be upheld on another ground, namely, that, under the findings, the defendant failed to sustain the burden of explaining the cause of the break in the main or showing its own freedom from negligence.

In its memorandum decision, the court indicated that it felt that the doctrine of *res ipsa loquitur* was applicable, but that, under the rule as applied in the courts of this state, the presumption of negligence

". . . merely supplied a presumption which enabled plaintiffs to get past a nonsuit, and that it could not take the place of evidence, nor be weighed against defendant's showing that it was free from negligence."

If this were not the case, the court indicated, it would have found the city liable under that doctrine. The court's ultimate finding on the city's negligence, or freedom from neg-

ligence, was that the city's investigation, "so far as it has gone, has shown that the city acted with due care in the operations examined." The city, in other words, had shown it was free of negligence in the operations examined, but it had not yet discovered the cause of the break nor had it shown that it was free of negligence in regard to that cause.

Where a plaintiff's evidence establishes that an instrumentality under the exclusive control of the defendants caused an injurious occurrence, which ordinarily does not happen if those in control of the instrumentality use ordinary care, there is an inference, permissible from the occurrence itself, that it was caused by the defendant's want of care. *Nopson v. Wockner*, 40 Wn. (2d) 645, 245 P. (2d) 1022. Legal control or responsibility for the proper and efficient functioning of the instrumentality which caused the injury and a superior, if not exclusive, position for knowing or obtaining knowledge of the facts which caused the injury, provide a sufficient basis for application of the doctrine. *Hogland v. Klein*, 49 Wn. (2d) 216, 298 P. (2) 1099. When these circumstances are shown, the plaintiff has made a *prima facie case*, and it devolves upon the defendant to produce evidence to meet and offset the effect of the presumption. *Hogland v. Klein*, *supra*.

Here, the water main was under the exclusive control of the defendant city, and the court found as a fact that a break of this sort does not ordinarily occur without the presence of negligence. It further found that the defendant had failed to explain the occurrence, and although it found that the defendant had exercised due care in many respects, the findings reveal that the defendant's evidence fell short of proving its freedom from negligence in regard to the break. It is evident, when the memorandum opinion is read in the light of the findings, that had the court had in mind the proper rule—that the inference of negligence is evidence to be weighed against the defendant's evidence—it would have based its decision on the premise that the inference to be drawn from the fact that the break occurred, outweighed the defendant's evidence of due care. This being the case, the judgments are affirmed.

SCHWELLENBACH, DONWORTH, OTT, and FOSTER, JJ., concur.

MALLERY, J., dissents.

FINLEY, J. (concurring in the result)—The majority mention the doctrine of the English case of *Rylands v. Fletcher*, L. R. 1 Exch. 265, and the doctrine of *res ipsa loquitur*. It is pointed out that the basic tenet of *Rylands*, liability without fault, has been enunciated in this state under certain circumstances; *i.e.*, in cases involving blasting operations. *Foster v. Preston Mill Co.*, 44 Wn. (2d) 440, 268 P. (2d) 645. However, without clearly relying upon the *Rylands* doctrine, the majority affirm the trial court on the basis of an application of the *res ipsa loquitur* doctrine.

I believe the instant case is so closely analogous to *Rylands* as to call for a clear-cut application or rejection of the principle as annunciated therein by the English court.

I would apply the principle of *Rylands* in the instant case. The latter is not distinguishable simply on the factual ground that the defendant is a municipal corporation engaged in a proprietary activity. On this basis, I concur in the result.

HILL, C. J. (dissenting)—The majority have determined that the doctrine of *res ipsa loquitur* applies, and with that I agree. I agree, too, that the permissible inference of negligence must be weighed against the evidence of the city, and has weight so long as reasonable men can still draw such an inference from the evidence. *Nopson v. Wockner* (1952), 40 Wn. (2d) 645, 647, 245 P. (2d) 1022.

There are two possible bases for the majority opinion:

(1) The majority may have concluded, as a matter of law, that the inference of negligence to be drawn from the fact that the break occurred, outweighed the defendant's evidence of due care, and that the trial court could have reached no other result. If that be the basis of the decision, I dissent, because it seems to me that reasonable minds could differ on the issue of the city's negligence.

From the break in the pipe, one can, as the trial court suggested in the finding quoted in the majority opinion, infer

negligence in the manufacture or installation (and mainte-
nance) of the pipe, or in the operation of the water system.
The city seems to have established due care and good en-
gineering practice with regard to installation and main-
tenance, and likewise to have established due care in the
operation of its system. So far as manufacture is concerned,
there is a serious question in my mind as to whether the city
can be responsible for any latent defect that could not have
been determined by any reasonable inspection. The ma-
jority say: "The pipe was strong enough to stand the pres-
sure exerted upon it at the time of the break and was within
the standard specifications." Under such conditions, I can-
not, as a matter of law, conclude that the permissible infer-
ence of negligence outweighs the city's evidence of due care,
and that the plaintiffs must recover.

(2) The majority may have concluded (and I believe
this to be the basis of the decision) that if the trial court had
correctly understood and applied the doctrine of *res ipsa
loquitur*, it is evident "when the memorandum opinion is
read in the light of the findings," that it "would have based
its decision on the premise that the inference to be drawn
from the fact that the break occurred, outweighed the de-
fendant's evidence of due care."

If that be the basis of the decision, I dissent, because I do
not believe we should affirm a judgment by the trial court
because of our belief as to what a trial judge would do,
gathered from reading his memorandum opinion in the light
of the findings. I would remand for findings and conclusions
based on the application of the doctrine of *res ipsa loquitur*.

---

September 4, 1957. Petition for rehearing denied.