GRACE & CO. (Pacific Coast), a corporation, Plaintiff,

v.

The CITY OF LOS ANGELES, a Municipal Corporation, et al., Defendants.

No. 20624.

United States District Court
S. D. California,
Central Division.

Nov. 24, 1958.

McCutchen, Black, Harnagel & Shea, Philip K. Verleger, Howard J. Privett, Los Angeles, Cal., for plaintiff.

Roger Arnebergh, City Atty., Arthur W. Nordstrom, Asst. City Atty., Los Angeles, Cal., C. N. Perkins, Deputy City Atty., San Pedro, Cal., for defendants.

WESTOVER, District Judge.

Defendant, City of Los Angeles, was and now is the owner of Berth 59, Los Angeles Harbor, and together with defendant, Outer Harbor Dock and Wharf Co., operated a certain steel and ·concrete shed at Berth 59 in that portion of Los Angeles County known as San Pedro.

Plaintiff was the owner of approximately 1,960 bags of coffee, which had been stored in the shed at Berth 59 after having been discharged by various vessels and was awaiting delivery to plaintiff.

Defendants maintained in the public street adjacent to the shed at Berth 59 a certain 8-inch cast-iron water pipe-line. A lateral line leading into the shed from the 8-inch pipe burst, allowing a great quantity of water to escape from the pipe-line under high pressure, which water flooded the floor of the shed at Berth 59 and damaged plaintiff's coffee.

Plaintiff alleges the defendants permitted the pipe to remain beneath the shed, although defendants knew or in the exercise of due care should have known that the pipe was in an ancient, weak, corroded and decaying condition, so that the pipe could not have reasonably been expected to contain water under high pressure.

At the time the pipe was installed it was the best pipe available. Plaintiff

makes no contention that the pipe-line or the lateral where the break occurred was negligently installed. At the time of installation defendants did not know of the corrosive nature of the soil, but subsequent to the installation the City, or some of its departments, became cognizant that the soil in the harbor area was highly corrosive. Based upon economic consideration, defendants established a policy of doing nothing about maintaining, repairing or replacing such water pipe-lines until a leak occurred and water was discovered on the surface of the ground.

Plaintiff contends defendants knew or should have known that the pipe was located in highly corrosive soil and, over the period of years involved, defendants should have conducted some sort of inspection to ascertain if the pipe had corroded in order to determine whether there was likelihood of the pipe bursting. Plaintiffs contend that failure to make an inspection for forty years was negligence.

At the trial experts testified the pipe in question failed because of graphitic corrosion. Graphitic corrosion occurs when iron in pipe is leached out and replaced by graphite. The leaching of the iron from the pipe and the replacement thereof by graphite occurs over a long period of time and does not change the pipe shape or contour. The only effect upon the pipe is that it loses strength so that under pressure the pipe in those particular spots where graphitic corrosion occurs gives way.

Plaintiffs contend defendants had knowledge that a break was imminent, for some months prior thereto there appeared to be a leakage in the system of more than 130.00 cubic feet of water per day. However, experts testified at the trial that in a graphitic corrosion break there is no gradual leakage, but that the surface of the pipe gives way all at once and thus allows water to spurt from the pipe.

After defendants received notice of the break in the pipe, the line was repaired by cutting out an eight-or-ten-foot length of pipe and inserting therein a new piece of cast-iron pipe. Defendants' employees found in the pipe removed an opening, caused by graphitic corrosion, approximately the size of a human hand. They also discovered that within a short distance on either side of the opening the pipe was in sound condition, so that it could be continued in use.

Plaintiff contends defendants are liable under two theories, the first being under the doctrine of Rylands v. Fletcher (1860) L.R. 3, H.L. 330—(liability without fault or absolute liability)—and, second, negligence.

### Absolute Liability.

Judge Yankwich of this court discusses Rylands v. Fletcher in Gainey v. Folkman, D.C., 114 F.Supp. 231 at page 233, saying:

"This case [Rylands v. Fletcher] was the starting point of a theory of liability which sought to depart from the old rule which postulated liability only upon the existence of fault or negligence. It envisaged situations where, despite the absence of fault or negligence, the use of one's property might be detrimental to others. Today the trend is to fasten liability if the result of the use constitutes a nuisance as to the adjoining owner."

The plaintiff in the above case contended that dusting of agricultural crops by the defendant had caused damage to alfalfa which was growing on plaintiff's land. Judge Yankwich stated:

"* * * Even the most extreme application of the doctrine of Rylands v. Fletcher would not warrant interference with a legitimate process, the dusting of plants of one's own property to control insect infestation. * * *"

The rule in California is stated by the California Supreme Court in Green v. General Petroleum Corp., 205 Cal. 328, 270 P. 952, 60 A.L.R. 475. At

page 332 of 205 Cal., at page 954 of 270 P., the Court said:

" * * * The rule is laid down in the decisions that a defendant is not liable unless he has been guilty of negligence. It has many variations. For instance, there is "found in our Reports the declaration that, when a person engaged in a lawful business exercises due care, the law does not make him an insurer of others against those consequences of his acts which reasonable care and foresight could not have prevented. * * *

" * * * It ought to be, and we are of the view that it is, the rule that, where an injury arises out of, or is caused directly and proximately by the contemplated act or thing in question, without the interposition of any external or independent agency which was not or could not be foreseen, there is an absolute liability for the consequential damage, regardless of any element of negligence either in the doing of the act or in the construction, use, or maintenance of the object or instrumentality that may have caused the injury.

" * * * [We are led] to the conclusion that the rule that injury may exist without liability is, as has been so well stated by another court, 'contrary to the general rule of liability where injury is caused; and since, in a sense, it is a preference of the rights of one property owner or user over that of another; and since the law is a jealous guardian of the right to lawfully use property without interference or diminution; and since the rule of "sic utere tuo ut alienum non lædas" is of broad and fundamental importance—the rule which allows such injury without liability therefor is an exception which is and should be narrowly limited and carefully confined.' Sussex [Land] etc., Co. v. Midwest Refining Co. [8 Cir., 294

F. 597], at page 601 [607, 34 A.L. R. 249]. * * * "

In the case at bar, there was the interposition of an external, independent agency which could not have been and was not foreseen by the defendants at the time the pipe was installed. The evidence indicates the defendants did not know the pipe was laid in corrosive soil and did not obtain such information until many years after its installation.

The United States Court of Appeals for the Tenth Circuit, in Anderson-Prichard Oil Corporation v. Parker, 245 F.2d 831, sustained a jury instruction given by the lower court to the effect that under the facts as presented to the jury there was no liability without fault.

Former District Judge Hamlin of the Northern District of California (now a member of the United States Court of Appeals for the Ninth Circuit) in Atkinson Co. v. Merrit, Chapman & Scott Corp., D.C.1954, 123 F.Supp. 720, discussed the problem of liability without fault in California. Prior to Judge Hamlin's decision, Judge James H. Oakley, sitting in the Superior Court of the State of California, in and for the County of Sacramento, wrote a memorandum of opinion dealing with the question of liability without fault. In his opinion Judge Hamlin points out that aside from the opinion of Judge Oakley there are three cases in California that indicate the Rylands v. Fletcher doctrine does not apply in California—Sutliff v. Sweetwater Water Company, 1920, 182 Cal. 34, 186 P. 766; Smith v. East Bay Municipal Utility Dist., 1954, 122 Cal.App.2d 613, 265 P.2d 610, and Curci v. Palo Verde Irrigation District, 1945, 69 Cal. App.2d 583, 159 P.2d 674.

Judge Hamlin also states that plaintiff relied upon three principal cases—Kall v. Carruthers, 1922, 59 Cal.App. 555, 211 P. 43; Parker v. Larsen, 1890, 86 Cal. 236, 24 P. 989, and Nola v. Orlando, 1932, 119 Cal.App. 518, 6 P.2d 984. He points out that these three cases all involve seepage of water, impounded by the defendants, onto land of plaintiffs. In all three cases recovery of damages

348

and injunctions were permitted without proof of negligence. Judge Hamlin concludes [123 F.Supp. 722]:

> "The court is of the opinion that the law of California is as stated by Judge Oakley and that this case is more clearly analogous to the Sutliff case, and that liability without fault under the Fletcher doctrine will not lie."

In Schindler v. Standard Oil Company of Indiana, 207 Mo.App. 190, 232 S.W. 735, the Court held there could be no recovery for damage caused by a leak in a water pipe on adjoining premises in the absence of negligence on the part of the adjoining land owner in the original construction of the pipe or in discovering or repairing known defects.

Judge Pierson M. Hall of this court, while a judge of the Superior Court of the State of California, in and for the County of Los Angeles, in Case No. 45,-697, Hubert F. Laugharn, etc. v. Bolsa Chica Oil Corporation (July, 1941), wrote an excellent opinion in which he discussed the law relative to liability in the absence of negligence. In that case the driller of an oil well forced drilling mud into a well under hydrostatic pressure which mud, according to the plaintiff, traveled through the underground structure from defendant's well into plaintiff's well, thereby causing damage to plaintiff's well.

Plaintiff filed a complaint in two counts, the first count being based upon the theory of absolute liability for injury done to plaintiff. In the second count the acts of defendant in drilling its well were alleged to have been negligently performed. Upon demurrer to the first cause of action the Court, after exhaustive review of the authorities in California and elsewhere, held the doctrine of Rylands v. Fletcher did not apply and that although plaintiff suffered damage he could not recover unless he could show the damage was caused by negligence on the part of defendant.

In the case at bar we are inclined to follow the rule as set forth in Green

v. General Petroleum Corp., supra. The court is of the opinion Judge Hamlin has set forth the proper rule to be applied in California and that the Fletcher v. Rylands doctrine does not apply in the case at bar.

Negligence.

If, in the case at bar, the court is to find for plaintiff, it will be necessary to find defendants have been negligent either in the installation, maintenance or inspection of the pipe in question. As stated before, there is no contention by plaintiff that the pipe was negligently installed; hence, the negligence, if any, would have to be found in the City's failure to inspect the pipe. Plaintiff's entire case rests upon the theory that defendants were negligent in failing to make inspection of the pipe-line during a period of forty years to determine its condition. Plaintiff alleges there was a duty on the part of defendants to inspect and, if defendants did not inspect, they were negligent. Plaintiff admits, however, there was no reasonable manner in which the line could be adequately inspected, other than to excavate the soil along the pipe-line and make physical inspection thereof.

The pipe-line was some ten feet beneath the surface of the ground. The break occurred in a lateral leading into the shed under a cement platform adjacent to Berth 59. To make an inspection, it would have been necessary for the City to excavate the line in its entirety, including the line under the cement platform, which would mean the breaking of the cement platform to get to the pipe below.

According to the testimony of experts, graphitic corrosion occurs sporadically. Graphitic corrosion may occur on the top of the pipe and not on the bottom, or on one side and not the other. Graphitic corrosion may occur in one spot and then may not occur for many feet along the line. It would be necessary to excavate around the entire pipe to locate a corroded area. An examination of the upper half of the pipe would not be sufficient because graphitic corrosion could

manifest itself on the lower portion of the pipe and not on the top or sides. To make complete inspection it would be necessary to remove the earth from beneath the line. The removal of earth from beneath the pipe would remove its support, putting a strain upon the pipe itself, and might cause a sinking or bending of the pipe, occasioning damage more extensive than the corrosion itself.

Testimony at the trial indicated the City of Los Angeles has adopted a "do nothing" policy regarding inspection of its water lines. It places water lines in the earth and then neither makes inspection nor replacement until leaks occur. When leaks develop they are repaired. When they become too numerous the pipe-line is replaced.

Defendants contend that when the line was installed it was the best pipe available and that such cast-iron pipe will ordinarily last for many, many years. In fact, evidence indicated that in Pennsylvania similar cast-iron pipe has been in use for more than 150 years in a non-corrosive soil.

If any policy has been adopted by municipalities in California, the policy is the same as that followed by the City of Los Angeles; that is, that after cast-iron water pipe is installed the line is used without inspection or replacement until there are sufficient breaks to indicate the pipe has corroded or has become undependable. Defendants contend there was nothing to indicate the break in question was imminent or the line undependable. In fact, the line was repaired and returned to use, and so far as this court is informed is in use today.

■ Negligence is a question of fact to be determined from all the surrounding circumstances. Although it might have been desirable to make an inspection of the water lines every two or three years, such inspection would be prohibitively expensive and economically unfeasible. The City, like individuals, is required to take only reasonable precautions.

■ Although there is some evidence that in other parts of the harbor area there had been pipe failure because of graphitic corrosion, nevertheless, we are of the opinion that considering all the evidence in this case the City was not negligent in failing to inspect the pipe.

Judgment will be for defendants. Counsel for defendants shall prepare findings of fact, conclusions of law and judgment in accordance with the rule.