[No. 42057.    En Banc.    December 16, 1971.]

PACIFIC NORTHWEST BELL TELEPHONE COMPANY, *Respondent*, v. PORT OF SEATTLE, *Appellant*.

*Reed, McClure, Moceri & Thonn,* by *Hugh A. McClure* and *William R. Hickman,* for appellant.

*Schweppe, Doolittle, Krug & Tausend,* by *Thomas R. Beierle,* for respondent.

SHARP, J.—The most important issue presented by this appeal, is whether the principle of liability without fault should be applied for damages caused by the rupture of a water main under the exclusive control of a municipal corporation.

On October 22, 1968, a pipe which formed a part of the fire protection system on terminal 18 of the Port of Seattle suddenly broke, and water from that break ran into a Pacific Northwest Bell Telephone Company manhole, damaging exposed wires therein. The pipe was part of a 1½ to 2 mile system of pipe which supplied water to the fire protection system of the Port of Seattle. The line was composed of 6-foot lengths of 6-inch, 8-inch, and 10-inch cast iron pipe, buried from 3 to 7 feet underground. The break occurred at a depth of approximately 4 to 5 feet. The line carried water at an average pressure of 135 to 150 pounds per square inch. The pipe had been in the ground some 25 years before the incident, and there is evidence that such pipe should last approximately 100 years before needing replacement.

Terminal 18 and this fire protection system had been built by Todd Shipyards, and were purchased from the shipyard by the port in 1965. The only leak in the system, since acquisition by the port, resulted from an earthquake in 1965.

While there appears to be no direct evidence as to what caused this particular break, there is testimony in the record that it may have been caused by land settlement. Terminal 18 was built on hydraulic fill, which apparently has a characteristic of continued settlement over time. The evi-

dence is that the only maintenance work on the system is to repair valves, fittings, and pipes as needed, there being no practical way of inspection for soundness. There is no known mechanical device for inspecting the line from the surface, and visual inspection would require digging down every 6 feet to a depth of 3 to 6 feet over the entire 2 mile system. The testimony was that even after digging up the pipe there would be no way of detecting whether the pipe would break that day, tomorrow, or within 6 months, and, furthermore, such digging around the pipe would increase the probability of breaks in the pipe.

In May, 1969, the telephone company filed a complaint against the port claiming damage due to the broken water pipe and basing liability on four theories: (1) nuisance, (2) trespass, (3) negligence, and (4) absolute liability. A jury trial was held on the question of liability only, and the case submitted to the jury on the theory of negligence. The jury was instructed as to inferences permissible under the doctrine of res ipsa loquitur by instruction No. 9, which reads:

> If you find that the ruptured water main was under the exclusive control of the defendant, and that it caused an injury to plaintiff which would ordinarily not have occurred if defendant had used ordinary care, there is an inference, permissible from the occurrence itself, that the injury was caused by the defendant's want of care, that is, its negligence.
>
> This inference of negligence is evidence to be weighed against the defendant's evidence.
>
> If you make these findings, you must therefore find that defendant was negligent unless you also find that the defendant establishes by a preponderance of the evidence that it did use ordinary care and was free of negligence in its maintenance of the water main, and free of negligence in the cause of the rupture of that water main.

Plaintiff took no exception to this, or to any other of the court's instructions.

The jury returned a verdict for defendant. Pacific Northwest Bell Telephone Company made alternative motions

for a judgment n.o.v. and for a new trial. The trial judge granted the motion for judgment n.o.v. on the basis that he felt the doctrine of strict liability was applicable. The court also granted plaintiff's alternative motion for a new trial. The Port of Seattle appeals.

■ This issue was before this court in *Kind v. Seattle*, 50 Wn.2d 485, 312 P.2d 811 (1957), wherein plaintiff's business property was flooded due to a rupture of a water main owned and maintained by the defendant city. Under substantially the same facts as the present case, the trial court, sitting without a jury, found the city liable under the doctrine of *Fletcher v. Rylands*, L.R. 1 Ex. 265 (1866). On appeal this court found that whether that doctrine applied need not be decided, and instead affirmed on the basis that "the defendant failed to sustain the burden of explaining the cause of the break in the main or showing its own freedom from negligence." The doctrine of res ipsa loquitur was found to be applicable, the court saying, at page 489:

> Where a plaintiff's evidence establishes that an instrumentality under the exclusive control of the defendants caused an injurious occurrence, which ordinarily does not happen if those in control of the instrumentality use ordinary care, there is an inference, permissible from the occurrence itself, that it was caused by the defendant's want of care. *Nopson v. Wockner*, 40 Wn. (2d) 645, 245 P. (2d) 1022. Legal control or responsibility for the proper and efficient functioning of the instrumentality which caused the injury and a superior, if not exclusive, position for knowing or obtaining knowledge of the facts which caused the injury, provide a sufficient basis for application of the doctrine. *Hogland v. Klein*, 49 Wn. (2d) 216, 298 P. (2d) 1099. When these circumstances are shown, the plaintiff has made a *prima facie case*, and it devolves upon the defendant to produce evidence to meet and offset the effect of the presumption. *Hogland v. Klein, supra.*

Here, the water main was under the exclusive control of the defendant city, and the court found as a fact that a break of this sort does not ordinarily occur without the presence of negligence. It further found that the defendant had failed to explain the occurrence, and although it

found that the defendant had exercised due care in many respects, the findings reveal that the defendant's evidence fell short of proving its freedom from negligence in regard to the break.

It was under this decision that instruction No. 9 in the present case was formulated. We have reconsidered this question and conclude that the rule from *Kind v. Seattle, supra,* is the appropriate rule, that the doctrine of res ipsa loquitur is applicable, and that the principle of liability without fault does not apply.

■■ The doctrine of strict liability for conditions and activities had its beginnings in *Fletcher v. Rylands, supra,* wherein water escaped from a reservoir a landowner kept on his property and damaged neighboring coal mines. The landowner was found liable without a showing of fault. The English court set out the rule, which many United States courts have cited as the rule of *Fletcher v. Rylands, supra,* in part as follows at page 278:

> the person who for his own purposes brings on his lands and collects and keeps there anything likely to do mischief if it escapes, must keep it in at his peril, and, if he does not do so, is prima facie answerable for all the damage which is the natural consequence of its escape.

On appeal to the House of Lords, this rule was sharply limited to cover only "non-natural" uses of land, and thus the emphasis was shifted to the abnormal and inappropriate character of the defendant's reservoir in coal mining country, rather than to the mere tendency of all water to escape. *Rylands v. Fletcher,* L.R. 3 H.L. 330 (1868); *see* W. Prosser, Law of Torts § 78 (4th ed. 1971); W. Prosser, Selected Topics on the Law of Torts 135 (1953). The English cases which followed have borne out the interpretation that strict liability is to be confined to things or activities which are extraordinary, exceptional, or abnormal. W. Prosser, Law of Torts § 78 (4th ed. 1971). *See also,* 2 F. Harper and F. James, The Law of Torts § 14.4 (1956) and the material cited in the 1968 supplement to that volume at page 12.

The Restatement has recognized this interpretation and in Restatement (Second) of Torts § 519 (Tent. Draft No. 10, 1964), the principle is stated in terms of abnormally dangerous activities.

(1) One who carries on an abnormally dangerous activity is subject to liability for harm to the person, land or chattels of another resulting from the activity, although he has exercised the utmost care to prevent such harm.

(2) Such strict liability is limited to the kind of harm, the risk of which makes the activity abnormally dangerous.

As to what constitutes an abnormal activity, section 520 states:

In determining whether an activity is abnormally dangerous, the following factors are to be considered:

(a) Whether the activity involves a high degree of risk of some harm to the person, land or chattels of others;

(b) Whether the gravity of the harm which may result from it is likely to be great;

(c) Whether the risk cannot be eliminated by the exercise of reasonable care;

(d) Whether the activity is not a matter of common usage;

(e) Whether the activity is inappropriate to the place where it is carried on; and

(f) The value of the activity to the community.

Applying these factors to this system, we do not find the activity to be abnormally dangerous. There has never been a break in the system before, absent an earthquake, and the pipe could have been expected to last many more years. It is a system commonly used for fire protection, and its placement underground is, of course, appropriate. We do not find section 519 of the Restatement (Tent. Draft No. 10, 1964), or *Rylands v. Fletcher, supra,* applicable.

■ Our conclusion that underground water mains do not constitute an abnormal condition warranting strict liability is supported by case authority. As stated in W. Prosser, Handbook of the Law of Torts § 77 (3d ed. 1964), at 526:

On the other hand the conditions and activities to which the American courts have refused to apply Rylands v. Fletcher, whether they purport to accept or to reject the case in principle, have been with few exceptions what the English courts would regard as a "natural" use of land, and not within the rule at all. They include water in household pipes, the tank of a humidity system, or authorized utility mains  .  .  .

(Footnotes omitted.)

In *Interstate Sash & Door Co. v. Cleveland,* 81 Ohio App. 127, 131, 73 N.E.2d 236 (1947), it was said:

According to the great weight of authority in this country and in England, the rule set forth in the *Rylands case* and similar cases is not applicable to underground pipes supplying water to inhabitants of a municipality. On the contrary, liability in the latter instances is dependent on negligence, not trespass, as instance the following:

"Water in an underground pipe is not such a dangerous instrumentality as to require a person so conveying it to confine it at his peril, and no recovery can be had for an injury to property caused by the leakage or bursting of an underground water pipe unless negligence in the construction or maintenance of the pipe is shown.  .  .  .

.  .  .

.  .  .  [I]t seems to us that to apply the doctrine of the escape from one's land of something that is inherently dangerous, whether animate or inanimate, to a system of pipe lines conducting water underground on city streets, is carrying the ancient doctrine beyond all reasonable limits.

Also, in *Midwest Oil Co. v. Aberdeen,* 69 S.D. 343, 10 N.W.2d 701 (1943), at 347:

Water mains are universally in use in cities, and to hold that a proper and reasonable use of such mains "necessarily involves a risk of serious harm to the person, land or chattels of others" would be contrary to the experience of at least several generations.

See also, *Interstate Sash & Door Co. v. Cleveland,* 148 Ohio St. 325, 74 N.E.2d 239 (1947); *Grace & Co. v. Los Angeles,* 168 F. Supp. 344 (S.D. Cal. 1958), *aff'd,* 278 F.2d 771 (9th

Cir. 1960); *McCord Rubber Co. v. St. Joseph Water Co.,* 181 Mo. 678, 81 S.W. 189 (1904); *Quigley v. Hibbing,* 268 Minn. 541, 129 N.W.2d 765 (1964).

Respondent refers us to three cases as supporting its theory of liability without fault. In the first of these, *Bierman v. New York,* 60 Misc. 2d 497, 302 N.Y.S.2d 696 (1969), a New York City small claims court allocated the economic burden from damage caused by a broken water main between the defendants, City of New York and the Consolidated Edison Company, on the one hand, and the plaintiff, a small home owner, on the other hand. The court, stating that it was charged with the responsibility to do substantial justice, found against the defendants on a "cost-spreading" theory.

In *Lubin v. Iowa City,* 257 Iowa 383, 131 N.W.2d 765 (1964), plaintiff sued for damages resulting from a broken water main on theories of liability without fault, res ipsa loquitur, and specific acts of negligence. The case was submitted to the jury on res ipsa, and after a defendant's verdict, the trial court granted a new trial on the basis that substantial justice was not done. On appeal, a new trial was affirmed and the matter remanded with directions to instruct on strict liability. The rationale of the court is found, at page 392, in its statement that:

> Legal scholars, with justification, accuse the courts of tending to fix tort liability, not by determining which party is at fault but by deciding which party can best stand the loss. 1963 Annual Survey of American Law, page 363. While we cannot accept such a basis for determining liability in most tort cases, it seems to be appropriate here.

The third case cited to us is *Bridgeman-Russell Co. v. Duluth,* 158 Minn. 509, 197 N.W. 971 (1924), where a 20-inch main leading out of the city reservoir broke causing damage. Relying on a prior Minnesota case finding liability without fault for damages caused by a break in the reservoir, the court stated, at page 510:

> There is no available basis upon which to distinguish the facts in this case from those present in the Wiltse

case. The main here in question was of such size as to be capable, if broken, of discharging in little more than an hour as great a volume of water as the Red Wing reservoir could hold. It seems to us wholly immaterial whether this break occurred in the side of the reservoir on top of the hill or in this large main at the foot thereof. If the hole discharging the pent-up waters was of the same size, the destructive force of that issuing from the foot of the hill would be greater than from the top.

Later, the Minnesota Supreme Court in *Quigley v. Hibbing,* 268 Minn. 541, 129 N.W.2d 765 (1964), limited the *Bridge-man-Russell* case to breaks in the primary reservoir or a main so related to it as to call for application of the same principle.

The question remains as to whether or not an instruction on res ipsa loquitur was proper in this case. Aside from the fact that plaintiff's complaint was based in part on res ipsa, and that instruction No. 9 was given without objection, we believe that the permissible inferences of the doctrine are appropriate.

■ We have here a harm which occurred to plaintiff without any fault on its part. The water pipe system, even though placed where it customarily and rightfully may be, nevertheless was buried beyond practical inspection and maintenance. Under these circumstances, the plaintiff is certainly entitled to the presumptions carried by the res ipsa instruction and defendant should be obligated to prove its freedom from negligence. Defendant met this burden to the satisfaction of the jury.

Finally, we note that the trial court granted plaintiff a new trial under CR 50(c), as an alternative to its judgment n.o.v. The order is not based upon any of the specific grounds set forth in CR 59, but instead merely states that it is "granted for the same reasons". As we have found these reasons insufficient to set aside the jury verdict, and as nothing further in the record has been specified to us as error requiring a new trial, we remand to the trial court for entry of judgment on the verdict.

HAMILTON, C.J., HUNTER, HALE, NEILL, STAFFORD, and WRIGHT, JJ., concur.

FINLEY, J. (dissenting)—In *Kind v. Seattle,* 50 Wn.2d 485, 312 P.2d 811 (1957), the trial judge, sitting without a jury, applied the strict liability rationale or principle of *Fletcher v. Rylands,* L.R. 1 Ex. 265 (1866) and, accordingly, entered judgment against the city. On appeal, this court declined to pass on the applicability of *Fletcher v. Rylands, supra,* but affirmed on other grounds. I concurred in the result, commenting as follows:

> I believe the instant case is so closely analogous to *Rylands* as to call for a clear-cut application or rejection of the principle as annunciated therein by the English court.

> I would apply the principle of *Rylands* in the instant case. The latter is not distinguishable simply on the factual ground that the defendant is a municipal corporation engaged in a proprietary activity.

The majority in the instant case, citing W. Prosser and other authorities—for whatever this may be worth—emphasizes a reluctance on the part of American courts in accepting and applying the strict liability principle of *Fletcher v. Rylands, supra.* This, I think, can be characterized and criticized as an unwarranted judicial reluctance to develop and to expand the law to fill an existing void as to legal remedies, and to meet a social need in a limited category of uniquely appropriate cases. And so it was with judicial reluctance, even in the time of Lord Coke, in the early development and expansion of the common law.

But curiously enough, judicial reluctance to change in the common law field—perhaps more often than not—does yield slowly to insistent and compelling need for social change. If this were not true and if judicial reluctance to change had prevailed consistently in the common law area, we would still be plagued today with the technical limitations and the inequities of the old, anachronistic common law forms of action. The latter, even today, sometimes tend to "rule us from the grave," despite the fact they have been

abolished by judicial decision, legislation, or constitutional provision, and the courts can operate today largely under modern rules of procedure. In any event, in a larger time span, growth has fairly consistently been a quality and a function of the great common law tradition.

Thus, it was my thinking concerning the disposition in *Kind v. Seattle, supra,* that the strict liability principle of *Fletcher v. Rylands, supra,* should have been forthrightly applied by this court, and my views as to this have not changed in the intervening years.

I do not think it would open any Pandora's Box—certainly not to any alarming or objectionable extent—if strict liability were applied in the instant case. I believe this is particularly so in view of the unique circumstances of this case, the fact that the Port of Seattle, a municipality or public entity, is involved, and the Port of Seattle would simply be required to assume and pay as a cost of doing business the damages incurred by plaintiff Pacific Northwest Bell Telephone Company, a Washington corporation. In other words, the public or social *benefits* provided by the business or functions of the Port of Seattle should simply be expected to be assessed with the special *expense* here involved; *i.e.,* the damages to the plaintiff telephone company would be one of the costs of such benefits and of the business or functions performed by the Port of Seattle. I say this recognizing that there was no evidence of want of due care or of deliberate or intentional negligence on the part of the Port of Seattle, and further recognizing, of course, that this involves imposition of liability without fault as a business expense of the public entity or municipality, *i.e.,* the Port of Seattle.

For the reasons indicated, I dissent and would affirm the judgment of the trial court in the instant case.

ROSELLINI, J., concurs with FINLEY, J.

Petition for rehearing denied February 22, 1972.