[No. 3668-5-III.   Division Three.   March 3, 1981.]

ELENA HERNANDEZ, *as Administratrix, Appellant,* v.
GEORGE E. FAILING CO., ET AL,
*Respondents.*

*Rembert Ryals* and *Critchlow & Williams,* for appellant.

*Terry A. Brooks, Brooks & Larson, David Friend,* and *Houger, Garvey & Schubert,* for respondents.

MUNSON, J.—Elena Hernandez appeals a summary judgment order[1] dismissing Benton Rural Electric Association from her wrongful death action in Benton County Superior Court. We affirm.

This appeal presents the sole question of whether a public utility may be held strictly liable for electrocution caused by a drilling rig coming into contact with the utility's uninsulated, but lawfully suspended, power transmission lines.[2] We hold the utility is not to be held strictly liable.[3]

Strict liability for abnormally dangerous activities has been adopted in Washington pursuant to Restatement (Second) of Torts §§ 519[4] and 520 (1976). *Pacific Northwest Bell Tel. Co. v. Port of Seattle,* 80 Wn.2d 59, 62–65, 491 P.2d 1037 (1971). What constitutes an abnormally dan-

---

[1] In this multiparty matter, CR 54(b) and RAP 2.2(d), requiring a determination by the trial court that there was no just cause to delay this appeal, have been fully complied with.

[2] The power lines were 29 feet high—9 feet higher than required. A freak accident threw a "bailer line" against the lines, killing Hernandez who was touching the well–drilling rig.

[3] "Strict liability" is used here in the sense of absolute liability or liability without fault and not in the sense used in Restatement (Second) of Torts § 402A (1965).

[4] Section 519. General Principle.

gerous activity is the subject of section 520, which states:

> In determining whether an activity is abnormally dangerous, the following factors are to be considered:
> . (a) existence of a high degree of risk of some harm to the person, land or chattels of others;
> (b) likelihood that the harm that results from it will be great;
> (c) inability to eliminate the risk by the exercise of reasonable care;
> (d) extent to which the activity is not a matter of common usage;
> (e) inappropriateness of the activity to the place where it is carried on; and
> (f) extent to which its value to the community is outweighed by its dangerous attributes.

██ Applied here, the high degree of risk of harm and seriousness of potential harm are clear. The record indicates that as many as one electrical accident per year may have occurred in the area serviced by Benton Rural Electric's uninsulated lines.[5] But the record suggests that it may be economically impractical to insulate all overhead power lines, and that such lines are ubiquitous in rural communities nationwide. Power lines must be strung between areas where power sources are located and the power is utilized; the societal value of electrical services needs no enumeration. In short, the risk is not

> so unusual, either because of its magnitude or because of the circumstances surrounding it, as to justify the imposition of strict liability for the harm that results from it, even though it is carried on with all reasonable care.

Restatement (Second) of Torts § 520, comment *f* at 37 (1976).

---

"(1) One who carries on an abnormally dangerous activity is subject to liability for harm to the person, land or chattels of another resulting from the activity, although he has exercised the utmost care to prevent the harm.

"(2) This strict liability is limited to the kind of harm, the possibility of which makes the activity abnormally dangerous."

[5]The record suggests that most accidents involve employees of the power company and are not always fatal. *But see Wray v. Benton County PUD*, 9 Wn. App. 456, 513 P.2d 99 (1973).

The two cases Hernandez cites are not apropos. In *Ferguson v. Northern States Power Co.,* 307 Minn. 26, 239 N.W.2d 190 (1976), the plaintiff was injured while he was trimming 35–foot poplar trees, standing on a 20–foot ladder within 2 1/2 feet of an 8,000–volt transmission line. Apparently one of the falling branches caught on the line. The court refused to impose absolute or strict liability, concluding it was a matter for the legislature because of the "severe economic consequences which may be sustained by the . . . abrupt imposition of such a rule." *Ferguson v. Northern States Power Co., supra* at 32. The court then went on to discuss negligence and comparative negligence, which are not before this court.

In *Ransome v. Wisconsin Elec. Power Co.,* 87 Wis. 2d 605, 275 N.W.2d 641 (1979), the court considered the distribution of electricity to a home to be a "product" in the context of Restatement (Second) of Torts § 402A (1965). Hernandez' attorney stated during oral argument he is not proceeding under this theory, but is seeking a holding of absolute liability. Factually, this case is distinguishable from *Ransome.* Here, there was no electrical occurrence in the plaintiff's home, but rather the placement of a well–drilling rig in a rural area close to power lines led to the accident. We note, however, that some courts have refused to apply Restatement (Second) of Torts § 402A (1965) to electrical wires. *See, e.g., Kemp v. Wisconsin Elec. Power Co.,* 44 Wis. 2d 571, 172 N.W.2d 161 (1969); *Williams v. Detroit Edison Co.,* 63 Mich. App. 559, 234 N.W.2d 702 (1975).

We conclude that the carrying of power through uninsulated lines across rural areas does not constitute such an abnormally dangerous condition as to impose strict liability upon electrical power companies. In reaching this conclusion, we join the majority of jurisdictions. *See, e.g., Wertz v. Holy Cross Elec. Ass'n,* 512 P.2d 286 (Colo. App. 1973); *Wirth v. Mayrath Indus., Inc.,* 278 N.W.2d 789 (N.D. 1979); *Brigham v. Moon Lake Elec. Ass'n,* 24 Utah 2d 292, 470 P.2d 393 (1970); *Kemp v. Wisconsin Elec. Power Co.,*

*supra; see also* Annot., *Liability of Electric Power Company for Injury or Death Resulting From Contact of Crane, Derrick, or Other Movable Machine With Electric Line,* 69 A.L.R.2d 93, 102 § 3(c) (1960); Annot., *Liability for Injury or Death Resulting When Pipe or Other Object is Manually Brought Into Contact With Electric Line,* 69 A.L.R.2d 9, 42 § 8 (1960). Summary judgment was properly granted.

Affirmed.

ROE, A.C.J., and GREEN, J., concur.